# FERDINAND BERNEI ET AL. *vs.* LIZZIE C. SAPPINGTON ET AL.

*Injunction to Restrain Trespass and to Remove Obstruction From Alley —Doubt as to the Plaintiff's Title—Allowing Improvements to be Made on Land Claimed Without Objection—Remedy at Law.*

An injunction will not be granted to restrain a trespass on land, or to require the defendant to remove his erections therefrom, when the plaintiff's title to the land is disputed and is not free from reasonable doubt, and when no irreparable injury will be caused to plaintiff by a continuance of the alleged trespass.

When the plaintiff's title to an easement of way is denied and is involved in doubt depending as it does upon the construction of title deeds and

the question of adverse user, a temporary injunction to restrain inter-
ference with the easement pending proceedings at law to establish
plaintiff's title will not be granted, unless the injury to the plaintiff from
defendant's obstruction of the way is likely to be ruinous or irrepara-
ble.

A lot of ground was conveyed to plaintiff's predecessors in title described
as running to a three-foot alley and binding thereon in one of the
courses, with the privilege of said alley in common and subject to the
right of the owner of the adjoining lot to build over the alley. The
owners of the adjoining lot had for more than fifty years maintained a
structure over the alley; the only entrance to it was by a door which
was kept locked, and a stairway leading to the second floor of the
building on this adjacent lot covered the whole space of the alley a
short distance from the door. One of the defendants became the lessee
of this adjoining lot in February, 1881, and had since then had com-
plete and visible control over the alley. Plaintiff allowed improve-
ments to be made on this lot which covered the alley at that time, with-
out making objection. In 1901 defendants erected a new building,
which covered the alleged alley way, and when the same was about
completed the plaintiff filed the bill in this case in June, 1901, alleging his
right to the use of the alley under the conveyance to his predecessor in
title, and asked for an injunction restraining the defendants from clos-
ing the alley and require them to remove the building material there-
from. *Held*, that since the right of the plaintiffs to the use of the alley
is doubtful and defendants' title thereto by adverse possession appears
to be valid, and since the plaintiff with full knowledge and without ob-
jection stood by and allowed defendants to erect the building over the
alley the injunction asked for will be refused, without prejudice to
the right of the plaintiff to bring an action at law to establish his title.

When a party who claims a right to use an alley in common with others,
under an ancient deed, makes no use of it but allows the owners of the
adjoining lot to close the alley and be in exclusive possession thereof
for more than twenty years, and then suffers them, without making ob-
jection, to expend money in erecting a building over the alley, he is not
entitled to the aid of a Court of equity to establish his right to the ease-
ment claimed, but is remitted to his remedy at law.

Appeal from Circuit Court No. 2, of Baltimore City
(SHARP, J.)

The cause was argued before McSHERRY, C. J., BRISCOE,
PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*George R. Willis* and *Louis B. Bernei*, for the appellants.

*Charles J. Bonaparte* and *Paul M. Burnett*, for the appel-
lees.

BURKE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court No. 2, of Baltimore City, dismissing the bill of complaint, without prejudice to the right of the plaintiffs to institute appropriate proceedings at law respecting the subject-matter of this controversy.

The bill sought to procure an injunction restaining the defendants from obstructing and closing the alley therein mentioned, and to require them to re-open the alley to the extent to which it may have been closed by them.

A somewhat detailed statement of the issue raised by the pleadings will make more evident the grounds upon which we rest the decision of the case.

The bill alleges that the plaintiffs are possessed of a certain lot of ground with improvements thereon situated in the city of Baltimore at the southeast corner of Eutaw and Lexington streets; that said lot was demised to the complainants' ancestor, Seligman Bernei, in 1881, by H. Marcus Denison; that in said conveyance the lot was described as follows: Beginning for the same at the southeast corner or intersection of Eutaw street and Lexington street, and running thence east, binding on Lexington street sixty-three feet to a three-feet alley, running from Lexington street, parallel with Eutaw street, of the depth of seventy-eight feet, laid out and left open by Christian Miller for the benefit of the purchasers of his lots, thence south parallel with Eutaw street and binding on said alley thirty-eight feet, thence west parallel with Lexington street sixty-three feet to Eutaw street, and thence north binding on Eutaw street thirty-eight feet to the place of beginning, with the right and privilege of said alley, in common with said Miller and his assigns, but subject to the right and privilege heretofore granted by Hezekiah Claggett to a certain John Daly and his assigns by indenture bearing date the 25th of March, 1824, of the use of said alley, and also the right of building over the same, so far as the said Hezekiah Claggett then had the right thereto, against, in, and upon the wall of the house then owned by him adjoining said alley; that the defendants, Lizzie C. Sap-

pington and Coale S. Brenan, are seized in fee of a certain lot
of ground with improvements thereon adjoining the plaintiffs'
property, known as 323 W. Lexington street, and that as such
owners they have the right to the use and privilege of the
alley as now laid out and used on the west side of the prop-
erty, and the right of building over the same so far as a cer-
tain Hezekiah Claggett has a right thereto, against, in and
upon the wall of the house once owned by him adjoining said
alley, so as not to injure said wall.

The bill then alleges that on February 14th, 1901, the de-
fendants, Lizzie C. Sappington and Coale S. Brenan, leased
their said property to Benjamin F. Spink for a term of fifteen
years, with the understanding that said lessee should tear down
the improvements on the lot, and erect a new three-story
house to cost not less than forty-five hundred dollars, and that
said Spink recently proceeded to have the old buildings torn
down, and for that purpose employed the defendant, Jones,
who is also under contract with said lessee to erect a three-
story house in place of the old building; that the work of erec-
tion of said house is now progressing, and that although
they have warned the defendants not to encroach upon said
alley, to the common use and privilege of which the plaintiffs
have a right, they, the said defendants, have nevertheless be-
gun to close up and build upon said space of three feet cov-
ered by said alley, and, unless restrained, will completely close
the same and appropriate said alley to their own use; that the
deprivation by the defendants of the plaintiffs' use and privi-
lege of said alley is not susceptible of adequate compensation
in damages at law, and will work irreparable injury to the
plaintiffs' property, unless the defendants be restrained by the
Court, and be directed to remove the obstructions from the
alley and restore said alley to its original condition as an
alley.

The prayer of the bill is that the defendants, or their agents,
may be enjoined from placing any brick, stone, or other build-
ing material in, or upon said alley, and from closing the same
as an alley, and that an order may be passed commanding the

defendants to remove any such building material therefrom, and to reopen the same to the extent to which it may have been closed by them.   To this bill the defendauts filed separate answers.   The answer of the defendant, Jones, alleges that on the 28th of March, 1901, he entered into a contract with Benjamin F. Spink to tear down an old and erect a new building on the Lot No. 323 W. Lexington street, and that on July 2nd, 1901, he had completed said improvements; he denied that he ever received any notice from the plaintiffs as alleged in the bill.

The answer of Benjamin F. Spink avers that he originally leased the premises, No. 323 W. Lexington street in February, 1881; that he has occupied the premises continuously since that date; that on February 14th, 1901, he entered into a new lease with the present owners; that pursuant to the provisions of said lease he has since the date thereof torn down the old improvements on said lot and has erected a new building thereon, the new building covering the same part of the lot upon which the old building stood; that on June 7th, 1901, after the building was under roof and practically completed, he received a notice from Louis B. Bernei to desist from further obstructing the said alley.   The answer denies the existence of the alley claimed by the plaintiffs, and avers that since he has been a tenant of the property the improvements thereon have covered the entire front of the lot, and that a hallway, or entrance way of the width of about three feet on the west side of said lot has during his occupancy of said premises, been entirely closed by a door under lock and key in the front, and a stairway of the entire width of said entrance way leading to the second floor of said building.   It avers that during the time he has occupied said property, that is since February, 1881, no easement in any part thereof has been enjoyed by the plaintiffs, or anyone else; that if the alley mentioned in the bill ever existed the same has been completely closed and that the same has been continuous, complete, uninterrupted, visible, adverse, notorious and hostile to any rights the plaintiffs may have had therein.

The answers of Lizzie C. Sappington and Coale S. Brenan deny the existence of the alley asserted by the plaintiffs, and claim title to the strip of land which the plaintiffs claim to be an alley; they deny the receipt of any notice from the plaintiffs until after the improvements of their said lot had been practically completed; aver title by adverse possession to said strip of land claimed by plaintiffs to be an alleyway, and further allege that any easement which the owners of the lot described in paragraph one of the bill has as grantees of George Smith and Thomas Mummey has long since been abandoned and extinguished.

The circumstances under which a Court of equity may be invoked to aid, or protect a legal right have been fixed by numerous decisions in this State. The party seeking the protection of the Court must be able to show a clear title, or at least a fair *prima facie* case in support of the title he asserts, and in addition thereto he must show that irreparable or serious injury will result from the invasion of his legal rights, the irreparable or serious nature of the injury to which the property in question is subject, and will likely sustain, before the legal right can be fully vindicated in the proper *forum*, being the equity on which the application for injunction is founded. *Whalen* v. *Delashmutt*, 59 Md. 250; *Gulick* v. *Fisher*, 92 Md. 353.

In the case of *Clayton* v. *Shoemaker et al.*, 67 Md. 216, it is said that when an application is made for an injunction to prevent waste, or trespass, it is incumbent on the plaintiff to make out a *prima facie* title to the property; but if his title to the extent it is set up by him is denied and contested by the respondent, and evidence enough is offered to show some ground for the denial, the injunction will not be granted till the disputed title between the parties is first settled on appropriate pleadings and full testimony. In cases where the legal title to the property is in dispute, and it appears by the pleadings and proof that serious loss, or injury will result, or is likely to result to the plaintiff before the disputed title could be established at law, the Court will grant a temporary in-

junction preserving the present *status*, until the title has been decided in a Court of law. *Lanahan* v. *Gahan*, 37 Md. 105; *Amelung* v. *Seekamp*, 9 G. & J. 468.

The record contains quite a large amount of testimony introduced to support the contentions of the respective parties, but in the view we take of the case we do not feel called upon to enter upon an extended discussion, or analysis of the evidence.

It is sufficient to say that the testimony discloses a case in which there is a real dispute as to the plaintiffs' title to the easement claimed by them, and that the evidence produced by the defendants tends strongly to support the grounds of defense relied on in the respective answers.

Upon the state of pleadings and proof disclosed by the record has a Court of equity jurisdiction to grant the relief prayed for in the bill?

It is apparent from the pleadings and evidence that the determination of the title to the strip of ground in controversy and of the rights of the parties therein depend largely upon the true construction of the title deeds under which the respective parties claim, and upon the question of adverse holding and user of the owners of the respective premises. These are all purely legal questions not appropriate to a Court of equity. The plaintiffs' title to the easement being denied and involved in great doubt, the question arises whether the record presents a case in which a temporary injunction should have been granted pending proceedings at law to establish the title. Such an injunction will not be granted in cases like the one under consideration, unless the Court can see that the mischief threatened, or impending is likely to be ruinous, or irreparable. We do not find anything in the evidence in this case to take it out of the general rule.

The plaintiffs' claim that the easement which they seek to establish as appurtenant to their property was created in 1804 under the assignment from Christian Miller to George Smith and Thomas Mummey under whom they claim. The leasehold title to the lot described in said assignment (being the

lot now owned by the plaintiffs) was acquired by Hezekiah
Claggett in 1818. Claggett in 1824, being then the owner of
the leasehold estate in the property now owned by the plain-
tiffs, conveyed to John Daly, the ancestor of the defendants,
Sappington and Coale S. Brenan, Lot No. 6, shown on the
plat filed in this case. This deed in its granting clause con-
tains the following words: "And particularly the use and
privilege of the alley as now laid out on the west side of the
above-described ground, and the right of building over the
same, so far as the said Claggett has a right thereto, against,
in, and upon the wall of the house now owned by him ad-
joining said alley so as not to injure said wall." Whether at
the date of said deed Lot No. 6 was improved, or unimproved
does not appear from the testimony. But in 1881 when Spink
took possession of said property, fifty-seven years after the
date of said deed, the entire front of said property was found
to be improved by a building which indicated that it had been
erected many years, the joists of which ran into the Bernei
wall on the west, and the stairway and west door of which
completely closed said alley and street to all access thereto.
It is apparent from the evidence that this condition must have
existed for many years before Seligman Bernei, the plaintiffs'
ancestor, acquired possession in 1871 of the property now
owned by them. The testimony indicates that the strip of
ground, called an alley in the bill, has been completely closed
for fifty years, and that during that time it has been in the un-
interrupted and exclusive control of the defendants, Lizzie C.
Sappington and Coale S. Brenan and their predecessors in
title. It is shown that Seligman Bernei allowed valuable im-
provements, which obstructed the alleged alley, to be made
upon the property in 1881 without objection, and that the
plaintiffs with the full knowledge, permitted Spink to expend
a large sum in the erection of buildings mentioned in the evi-
dence by which the alley in question was entirely closed,
without a word of protest until the improvements were prac-
tically completed.

Under these circumstances to grant the prayer of the plain-

tiffs' bill would be to do an act of injustice and oppression. We are of the opinion that the decree of the Court below should be affirmed.

> *Decree affirmed with the costs to the appellees.*

(Decided November 23rd, 1905.)