MARYLAND THEATRICAL CORPORATION *v.*
MANAYUNK TRUST COMPANY.
[No. 38, April Term, 1929.]

*Decided July 12th, 1929.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Joseph C. France* and *Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Vernon Cook* and *S. Ralph Warnken,* for the appellee.

Digges, J., delivered the opinion of the Court.

The question presented by this appeal is whether or not a lease, entered into by the predecessor in title of the appellant as lessee and the predecessor in title of the appellees as lessor, is redeemable. This lease was dated May 29th, 1914, and covered a lot located in Baltimore City known as 114 West Lexington Street. This lot had a frontage of 22½ feet on Lexington Street, an irregular depth of 107 feet, and contained 2,534 square feet. It was leased for the purpose of and is now being used as the entrance to a theater belonging to the appellant. The lease was "for a term of six years commencing on the first day of October, 1914 and ending on

the 30th day of September, 1920; at the end of said term of six years the tenant, its successors and assigns shall have the right to renew this lease for a further term of eight years commencing on the first day of October, 1920 and ending on the 30th day of September, 1928; at the end of said term of eight years said tenant shall have the right to renew this lease for a further term of ten years commencing on the first day of October, 1928 and ending on the 30th day of September, 1938." The tenant, for itself, its successors and assigns, covenanted and agreed to pay to the landlord, her personal representatives and assigns, the sum of $6,500 per year for the said term of six years, the sum of $7,500 per year for the said term of eight years, and for the said term of ten years the sum of $7,500 per year, together with such other amount per year, in addition to said $7,500, as may be fixed in the method later prescribed in said lease; the payments of rent to be made in equal monthly instalments in advance, accounting from the first day of each of the said terms. It was further provided that, if the amount of rent for the aforesaid term of ten years in addition to the aforesaid sum of $7,500 could not be agreed upon by the landlord and the tenant, then the landlord and the tenant should each appoint one arbitrator on or before the first day of May, 1928, and said two arbitrators should fix said additional amount, and if they could not agree, they should appoint a third arbitrator, and the majority of the three should fix said additional amount, which said additional amount fixed in either method should bind the parties; and if said two arbitrators could not agree on said additional amount, or could not agree on the third arbitrator, on or before June 1st, 1928, or if, having agreed on the third arbitrator, the majority could not agree on said additional amount on or before July 1st, 1928, then said appointment should be void, and the tenant agreed to pay a reasonable rent per annum for said property for said term of ten years, said reasonable rent to be determined in a suit instituted in one of the courts of Baltimore City to recover the rent for the month of October, 1928, to be tried before the court, without a jury, and if in said suit the judgment should

be for $625 or less, exclusive of costs, then the said rent for the ten year term should be $625 per month, and if said judgment should be for a sum, exclusive of costs, more than $625, then the monthly rent for the said ten year term should be that sum. It is further provided: "In addition to the aforesaid sums the tenant for itself, its successors and assigns agrees to pay to the landlord her personal representatives and assigns as rent during the continuance of this lease the following sums when due after demand by the landlord, to wit, one-half of any increase in taxes on the leased premises over the taxes for the year 1914 arising not from an increased rate but solely from an increased assessment on said leased premises, the present assessment being $40,125; also any water rent on said leased premises in excess of $13; also any fire insurance premiums paid by the landlord in excess of the rate of $50 per annum." And further: "This lease shall be deemed renewed for the aforesaid term of eight years and for the aforesaid term of ten years unless the tenant, its successors or assigns shall give notice to the landlord and her personal representatives or assigns to the contrary on or before the first day of April, 1920 or the 1st day of April, 1928, respectively and unless this lease be terminated in any manner prior to the 30th day of September, 1938, then and in that event the tenant, its successors and assigns shall have the right on the 29th or 30th day of September, 1938, to purchase the leased premises at and for the sum of $125,000 and the landlord, her personal representatives and assigns covenants upon the payment to her, him or them of the said sum of $125,000 to convey the leased premises to the tenant, its successors or assigns hereunder by a good and sufficient deed free from all encumbrances except an annual ground rent of $240." The foregoing is a statement of such portions of the lease as are necessary for the determination of the questions here involved.

The record shows that the tenant entered into possession under the lease and paid the rent therein specified for the first six year period, which ended September 30th, 1920, and after that date continued, for the additional period of eight years, paying the increased rent specified for that period,

which would expire September 30th, 1928; that about March 15th, 1928, the appellant gave verbal notice to the defendant of its intention to redeem the property affected by the lease, and on or about April 30th, 1928, gave formal notice in writing of its intention so to do. The appellees denied the right of the appellant to redeem the lease, whereupon the appellant filed its bill in the Circuit Court of Baltimore City, in which it alleged that it was entitled to redeem the lease, that it was ready, able, and willing to pay the redemption price fixed by law; that the defendant denied the redeemability of said rent and refused to execute a deed redeeming the same upon payment or tender to them by the appellant of "a sum of money equal to the capitalization of the rent reserved at the rate of six per cent., together with any and all rent accruing to the day of such tender." The bill prayed that the defendant be required by decree, upon payment or tender of the redemption price, to execute and deliver to the appellant a deed redeeming the rent reserved on the property referred to in the aforesaid lease in accordance with the provisions of section 95 of article 21 and section 25 of article 53 of the Code, "to the end that said annual rent reserved in said lease may be merged and extinguished," and that the appellant "may hold said property clear and discharged from said lease." After testimony and hearing, the chancellor, on March 28th, 1929, passed a decree dismissing the bill of complaint, from which decree the appeal here was taken.

The statute under which the appellant claims the right to redeem this lease is section 93 of article 21 of the Code, and reads as follows: "All rents reserved by leases or subleases of land hereafter made in this State for a longer period than fifteen years shall be redeemable at any time after expiration of five years from date of such leases or subleases, at the option of the tenant, after a notice of one month to the landlord, for a sum of money equal to the capitalization of the rent reserved at a rate not exceeding six per centum."

The appellees (defendants below) contended before the chancellor, as they do now: First, that even if the lease is

considered to be for a 24-year term, it is not redeemable, because the redemption statutes were not intended to apply, and cannot be applied, to a rent so fluctuating and uncertain as it is in this lease; second, that the lease is for a period less than fifteen years, i. e., a lease for six years, with successive rights of renewal for eight and ten years respectively; third, the Act of 1914, chapter 371, which became effective April 10th, 1914, prior to the execution of the lease under discussion, excludes this lease from the operation of the redemption laws, because the term of the lease, including all renewals, does not exceed twenty-five years. We will consider these questions in reverse order.

The lease was dated May 29th, 1914. The Act of 1914, chapter 371, was approved and became effective on April 10th, 1914; it declares that the provisions of chapter 485 of the Acts of 1884, chapter 395 of the Acts of 1888, and chapter 207 of the Acts of 1900, "were not intended to apply and do not apply to leases or subleases of property leased for business purposes, when such leases or subleases contain a clause prohibiting assigning or subleasing all or any part or parts of the property leased, without the written consent of the landlord, and where the term of such lease or subleases, including all renewals provided for therein, shall not exceed twenty-five years." The effect of this act was to make irredeemable certain leases which under the previous statutes were redeemable. It prescribed a class of leases which should be irredeemable, and set out the requisites necessary to entitle a lease to be placed in said irredeemable class. These requirements were three: First, that it should be a lease for business purposes; second, that such lease must contain a clause prohibiting assigning or subleasing all or any part or parts of the property leased without the written consent of the landlord; and third, that the term of such lease or sublease, including all renewals provided for therein, should not exceed twenty-five years.

Does the lease under consideration here contain such provisions as place it in the irredeemable class provided for in

the Act of 1914? There is no doubt that it is a lease for business purposes, and the term, including all renewals, does not exceed twenty-five years; but it is equally clear that it does not contain a clause prohibiting assigning or subleasing all or any part of the property, without the written consent of the landlord. It is contended by the appellees that if the lease is for business purposes and is for a term of less than twenty-five years, it is irredeemable, because the provision as to its containing a clause against assignment and the provision as to the term of less than twenty-five years should be read in the alternative, and that if it was for business purposes, and either contained a clause against assignment or was for a term less than twenty-five years, the Act of 1914 applies and renders it irredeemable. This position, we think, is erroneous, because, as stated, the language of the Act of 1914 clearly prescribes the three conditions above set forth, and the result to the parties, if we omit either of the conditions, is very different from when both are included. When the second and third conditions are present, the lease would be for a term not exceeding twenty-five years, and the lessee would remain the tenant throughout the term; whereas if the second condition was absent, the term of the lease still would not exceed twenty-five years, but there might be any number of successive tenants during the term.

Neither do we think the second contention of the appellees, to wit, that the lease is for a period less than fifteen years, can prevail. The purpose of the redemption statutes, the policy of the state in enacting the same, and the mischief sought to be remedied, have been judicially determined by this court, and clearly stated by our predecessors in *Stewart v. Gorter,* 70 Md. 242, wherein it was said: "The Act of 1888 was the result of a well-grounded belief that these long leases, with their covenants of renewal, were injurious to the prosperity of the City of Baltimore, and that sound public policy demanded that all leases hereafter made, if for more than fifteen years, might be ended at the option of the tenant or lessee, upon paying the capitalization of his

ground rent at six per centum. It was the system of these long leases, irredeemable until the end of the term, that the Legislature wished to break up, rather than for any special consideration for the lessees, that caused the Act." What was there said in reference to the Act of 1888 applies with full force to the Act of 1900, which controls the lease now under consideration.

It is true that the Act of 1914, chapter 371, states that it was not the purpose of the Legislature in 1884, 1888 and 1900 to apply those statutes governing the redemption of leases to leases for business purposes; and the contention was made in *Marburg v. Mercantile Building Co.,* 154 Md. 438, that the courts should give effect to a subsequent legislative declaration as to what was the purpose of prior legislatures in enacting this legislation. That contention was answered by the court, speaking through Judge Sloan, when it said: "The interpretation of statutes is the province of the courts, on which legislative interpretation of prior acts is not binding. *Gough v. Pratt,* 9 Md. 526, 532; *Southgate v. Annan,* 31 Md. 113, 118."

In *King v. Kaiser,* 126 Md. 213, in speaking of *Stewart v. Gorter, supra,* it was said: "Some reliance also appears to have been placed upon the decision of this court in *Stewart v. Gorter,* 70 Md. 242; but a reading of that opinion cannot fail to disclose the fact that what had been attempted in that case was a deliberate evasion of the Acts of 1884, chapter 485, and 1888, chapter 395, intended to put an end to the creation of irredeemable leases. Thus that case is wholly inapplicable to a case like the present." The lease then being considered by the court was one for a term of five years at an annual rental of fifty dollars, and provided that the lessor "does hereby lease for a period of five years renewable for an additional period of twenty years at sixty dollars per year." After the expiration of the five year term, the lessee filed a bill in equity to compel the execution of a lease for an additional term of twenty years at a rental of sixty dollars per annum, and was met with the defense

that the lease from its inception was a lease for twenty-five years, and, being for more than seven years, was not valid unless executed, acknowledged and recorded as prescribed by article 21, section 1, of the Code. The court there decided that for the purpose of the recording statutes it was a lease for five years with the option of compelling the execution of a new lease for the additional period of twenty years, and therefore the original lease for five years was valid, even though unrecorded. The question of the redeemability of the lease did not enter into the determination of the case, but in the course of that opinion it was said: "The question in this case is, whether the provision mentioned in the agreement is to be regarded as an extension of the term, or an option for another term, or an agreement to lease at a subsequent time for a twenty-year term. The cases construing the proper meaning to be ascribed to the term 'renewal' or 'renewable' are by no means uniform. Something of a collection of them will be found in *7th Words and Phrases,* page 6086, and *4th Words and Phrases,* 2d series, pages 268 and 269. A careful examination of the cases there cited tends to the conclusion that the construction to be given to the words 'renewal' and 'renewable' is controlled by the intention of the parties at the time when the paper is executed." And the court there found that it was the intention of the parties that a term of five years be created, with the right or option on the part of the lessee to require the execution of a new lease for an additional period of twenty years. The court in that case held that the decision in *Stewart v. Gorter* had no application, and gave as its reason for this statement that it was a palpable attempt to evade the redemption statutes, but such a purpose would not be conclusive upon the question of redeemability, for if we are to carry out the spirit and intent of the redemption statutes, such cases should not be decided with sole reference to whether the record did or did not show an attempt or intention to evade the statute.

In *Swan v. Kemp,* 97 Md. 687, it was declared that the redemption legislation, as interpreted in *Stewart v. Gorter,*

*supra,* was remedial in its character, the court there stating: "It is, therefore, by the settled rule of construction in such cases, to be liberally construed so as to advance the remedy and suppress or prevent the mischief against which it is directed. Accordingly it was applied in the case just cited to a lease which, by its strict, literal terms, did not come within the wording of the statute. It was there also held that the policy of the law could not be contravened by a waiver of its provisions by the parties to the lease. * * * The effect of the ruling of the court in the case of *Stewart v. Gorter, supra,* is that the legislation in question shall be construed to carry out its policy; and will not be allowed to be thwarted by agreements or contractual provisions evasive of its purpose. If express agreements and provisions are not allowed to avoid the effect of the legislation in question, the courts will not be astute, in cases falling within the the letter and terms of the law, to find reasons for wresting them from its operation by construction."

The language of the lease now before us is: "The landlord for and on behalf of herself, her personal representatives and assigns hereby leases to the tenant, its successors and assigns all that property * * * known as No. 114 West Lexington Street in Baltimore City for a term of six years commencing on the first day of October, 1914, and ending on the 30th day of September, 1920; at the end of said term of six years the tenant, its successors and assigns shall have the right to renew this lease for a further term of eight years commencing on the first day of October, 1920, and ending on the 30th day of September, 1928; at the end of said term of eight years said tenant shall have the right to renew this lease for a further term of ten years commencing on the first day of October, 1928, and ending on the 30th day of September, 1938." It further provides: "This lease shall be deemed renewed for the aforesaid term of eight years and for the aforesaid term of ten years unless the tenant, its successors or assigns shall give notice to the landlord and her personal representatives or assigns to the contrary on or before the 1st day of April, 1920, or the 1st day of April,

1928, respectively, and unless this lease be terminated in any manner prior to the 30th day of September, 1938, then and in that event the tenant, its successors and assigns shall have the right on the 29th or 30th day of September, 1938, to purchase the leased premises at and for the sum of $125,000 and the landlord, her personal representatives and assigns covenants upon the payment to her, him or them of the said sum of $125,000 to convey the leased premises to the tenant, its successors or assigns hereunder by a good and sufficient deed free from all encumbrances except an annual ground rent of $240."

In 16 *R. C. L.* 885, sec. 389, it is said: "A distinction is made between a covenant in a lease for a renewal and a provision therein for the extension of the term at the option of the lessee, the courts treating the latter, upon the exercise of the privilege, as a present demise for the full term of which it may be extended and not a demise for the shorter period with a privilege for a new lease for the extended term." In *Taylor on Landlord and Tenant,* sec. 332, the rule is thus stated: "Although it is said that an additional term, granted under the covenant to renew, is not a new demise, but an extension of the original term, yet under the ordinary form of lease there is a distinction between a stipulation to renew the lease for an additional term and a stipulation to extend it for an additional term, since the former requires the making of a new lease and the latter does not." In *Kentucky Lumber Co. v. Newell* (Ky.), 105 S. W. 972, the lease was for a period of five years "with privilege of renewal from year to year at the same rent per annum as long as second party may want said land." Stating the law of the case, the court there said: "According to the weight of authority in the adjudged cases, a lease for a term from year to year so long as the lessee wanted the land is a present demise, and the lessee remaining in possession is an extension of the lease without renewal or without notice. A distinction is sometimes recognized between a covenant to renew a lease, and a provision for the extension of the term at the option of the lessee. *Brown v. Samuels,* 70 S. W.

1047. * * * But we apprehend that the intention of the parties to the instrument is the controlling thing. If they contemplated that a new lease was to be executed before the lessee would have the right to retain the premises beyond the original term, then such renewal ought to be executed. But if their intention was that the lessee should have the right to retain the premises after the expiration of the original term, but upon the same terms of payment, and so forth, without the necessity of entering into a new lease, then of course the matter should be allowed to go that way. The office of judicial construction is simply to arrive at and effectuate the original intention of the parties as evidenced by their document." The court then concluded that, under all the facts, the parties in using the word "renewal" did not contemplate a renewal of the lease as that term is used in the law books, and held that the tenant was entitled to the possession of the property."

In *Underhill on Landlord and Tenant,* vol. 2, sec. 803, in discussing the difference between the extension of a lease and the renewal thereof, the author states: "So, where a lease gives the lessee a renewal at his election, and he elects to continue, a present demise is created which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease should be executed. In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease. The lease must clearly and positively show that the making of a new lease was intended. This must appear from the express language of the parties. The reason for the presumption is the fact that the making of a new lease will involve trouble and expense, which should be avoided by the courts, if possible, unless it is very clear that the parties had expressly agreed to incur such trouble and expense." In the case of *Kramer v. Cook,* 7 Gray (Mass.) 550, it was said: "The provision in the lease is not a mere covenant of the plaintiff for renewal; no formal renewal was contemplated by the parties. The agreement itself is, as to

the additional term, a lease *de futuro,* requiring only the lapse of the preceding term and the election of the defendant to become a lease *in praesenti.* All that is necessary to its validity is the fact of election."

The words "renew" or "renewal" are not words of art, and they have no legal or technical signification. 24 *Am. & Eng. Encyc. of Law,* 2d ed., p. 465; *Russell v. Phillips,* 14 Q. B. 892; *Flanagin v. Hambleton,* 54 Md. 227. In the last mentioned case this court said: "The word 'renewal' has no legal or strictly technical signification. Whether a note is a renewal of another note, adjudged cases say depends entirely upon the intention of the parties. *Gault v. McGrath,* 32 Pa. St. 397; *Hacker v. Perkins,* 5 Whart. 511." See also *Tiffany, Landlord & Tenant,* Vol. 2, pp. 1514-1519, sec. 218, 219.

It will thus be seen, according to what we believe to be the weight of authority, supported by the stronger reason, that the question of whether the use of the word "renewal" is to be taken to require the execution of a new contract, or whether it is to be construed as meaning an extension of the original term, is dependent upon the intention of the parties, to be gathered from the language of the lease, the purposes to be accomplished by its execution, and the surrounding circumstances at the time of its making. Considering the language in the lease now before us, keeping in mind the purpose for which the property leased was to be and is now being used, it having a comparatively small frontage on Lexington Street and forming the entrance from that street to the interior of a theatre of great value, which present and future value depends in large measure upon the maintenance and control of this entrance, we are led to the conclusion that it was the intention of the parties to execute a lease for the period of twenty-four years, which period might be lessened at the pleasure of the lessee to a six or fourteen year period by his giving the specified notice to the lessor of his intention to restrict its operation to one or the other of those periods. This interpretation, as to the intention of the parties in em-

ploying the language they did, is strengthened by the fact that the lease provides that it is a lease for the full twenty-four years unless by positive act of the lessee the period be shortened. Applying the redemption statutes, with their judicially determined purpose of eradicating a system held to be detrimental to the best welfare of the City of Baltimore, it is our opinion that the lease in question is one for a period longer than fifteen years, and redeemable.

In the case of *Sweeney v. Hagerstown Trust Co.,* 144 Md. 612, analogous to *King v. Kaiser, supra,* the lease was for five years "with the privilege of re-rental," and the question there presented was: Did section 1 of article 21 of the Code require the lease under construction to be recorded in order to make it valid? It was decided that for that purpose, giving effect to the intent of the parties, it was a lease for five years with an option for a new lease for a like period. In neither of these cases was the application of the redemption statutes involved.

The facts in the case of *Silberstein v. Epstein,* 146 Md. 254, make it inapplicable to the question here involved, for the reason that there was an interval between the first and second periods. The first lease having expired, the second lease was entered into the day succeeding such expiration, for a period of ten years, with no covenant of renewal. Considering the lease then in effect and before the court, it was clearly apparent that the lease was for a term less than fifteen years, and therefore irredeemable. As stated therein: "It was not in terms or apparent intent a mere continuance of the first agreement."

The third and final contention of the appellees is that the statute cannot apply to such a lease because the rent reserved throughout the 24-year period is not uniform and is not certain and determined, and therefore is not susceptible of capitalization at any particular time. It is true that the rent during the first six years is $1,000 per annum less than during the succeeding eight years, and that a fixing of the rent by the method prescribed in the lease applicable to the last

ten years may, and in all probability would, result in a rent differing in amount from either of the other periods. They argue that it cannot be said that the rent reserved was $6,500, $7,500, some other sum determined for the ten-year period, or the average of these three amounts, and therefore, under the authority of *Walker v. Washington Grove Assn.,* 127 Md. 564, it is not a rent so definite as to be the subject of capitalization in accordance with the redemption statutes. In that case Judge Boyd was careful to limit the decision to the facts of the case before the court, and pointed out that it was highly improbable that a business corporation would adopt the scheme there employed for general business purposes, or in an effort to evade the redemption statutes; and further stated: "It cannot be contended that it was ever intended that the association should surrender its entire ownership and control of the lots in the cottage department, where this lot is." Again, there was no definite rent reserved, or no definite method agreed upon by which an ascertainment could be had. What was contended for as being annual rent in that case was such an amount as the corporation might declare as dividends on the five shares of stock held by the lessee, not exceeding six per cent. of the par value of the stock; in addition, a part of the consideration was that the lessee waived and released "all rights and claims in and to any and all dividend or dividends, gain or gains, which may hereafter, so long as this indenture shall remain in full force and value, accrue and be due and payable on the said five shares of stock," as well as in consideration of the covenants and promises of the lessee therein contained. In commenting upon this provision, Judge Boyd further stated: "If therefore it be conceded that the owner of the leasehold estate tendered payment of the capitalization of the highest amount that she could be assessed for, which was six dollars per annum, the capitalization of which at six per cent. is one hundred dollars, what is to be said of the release of the dividends or other gains that may accrue? The lessee only released such as accrue and are due and payable 'so long as this indenture shall remain in full force

and value,' and hence if this indenture ceases to be in force, the provision for the release of dividends, etc., would cease. It would be impossible to ascertain, and capitalize the amount of such dividends or gains, yet they are as much rent within the meaning of this instrument as assessments." The facts of that case, as disclosed by the opinion and a reading of the record, are so totally different from those of the case now under consideration that it is clear that the conclusion there reached is not controlling here.

In the present case the rent reserved, although not uniform throughout the term, is certain and definite, or can be made certain and definite by the terms of the lease itself, during each day of its continuance. We therefore have a case, controlled by the Act of 1900, chapter 207, creating a lease for a longer period than fifteen years, of which, prior to the expiration of the fourteenth year, application was made for redemption. This application was made after five years from the date of the lease. The amount of the rent reserved at the time of the application for redemption and demand for a conveyance of the property was $7,500 per annum, plus one-half of any increase in taxes over the taxes for the year 1914, due to increased assessment and not rate, the 1914 assessment being $40,125; plus water rent in excess of $13 a year; and plus fire insurance premiums in excess of $50 a year; these last three items constituting a part of the rent reserved according to the specific agreement between the parties contained in the lease, and being easily subject to definite ascertainment in amount.

It is argued by the appellees that, because one year of the third period of ten years must be added to the first two periods to make out fifteen years, the rent for that period should be taken into consideration, even though it had not begun to run at the time of the application for redemption. This contention is answered by the decision of this court in *Brager v. Bigham,* 127 Md. 148, wherein it was held that a term to begin *in futuro,* created by lease then in effect, could be redeemed at any time after the expiration of five years from its date, even though a portion of the considera-

tion for the lease, which was a condition precedent to the beginning of the future term, had not been complied with by the lessee, and by which the lessors were entitled either to the erection of a building at a cost of $20,000 or the payment of $10,000 in cash. The record discloses that the lessor here was represented by eminent counsel at the time of the execution of the lease, and at least a doubt was communicated to her as to its being irredeemable. Taking these circumstances into consideration, together with the price of $125,000, which she placed as its sale value at the termination of the 24-year period, it is difficult to escape the conclusion that she knew it might be redeemed, and that she was willing to have it redeemed at a capitalization of the rent reserved during each period of the continuance of the lease.

From what we have said, our conclusions are: First, that the Act of 1914, Chapter 371, does not apply to this lease; second, that it is a lease for a longer period than fifteen years, and is redeemable after five years from the date thereof at a capitalization of the rent reserved in effect at the time of the application; and third, that the rent reserved in this case at the time of the application was $7,500 plus the additional sums contracted to be paid as rent, in force at that time. It follows that there was error in the decree passed by the chancellor dismissing the bill, and the same will be reversed.

*Decree reversed, and cause remanded for further proceedings in conformity with this opinion, with costs to the appellant.*