ISIDOR SCHULTZ *v.* NATHAN KAPLAN, ET AL.

[No. 52, October Term, 1947.]

*Decided December 12, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Abram C. Joseph,* with whom was *Louis J. Sagner* on the brief, for the appellant.

*Ward B. Coe, Jr.,* with whom were *Robert R. Carman, Saul H. Brotman* and *Carman, Anderson & Barnes* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Isidor Schultz from a declaratory judgment entered in the Superior Court of Baltimore City in favor of Nathan Kaplan et al.

On the 31st day of October, 1933, Lena Kaplan and David Kaplan, her husband, as lessors, and Ruth Schultz, as lessee, entered into a lease for a property at 779 Washington Boulevard for a term of five years beginning on December 20, 1933 and ending on December 19, 1938, at the rental of $50 per month. This lease was subject to the unqualified right of the lessee to terminate the lease at the end of any year upon sixty days' notice prior to the end of such lease. David Kaplan having died on April 30, 1938, Lena Kaplan, his wife, who was his co-tenant by the entireties became the owner of the property.

On October 21, 1938, Lean Kaplan, widow, executed a lease to Isidor Schultz, the husband of Ruth Schultz, for the same property, where the said Isidore Schultz was engaged in the meat and grocery business. This lease began on the first day of January, 1939, and ended on the 31st day of December, 1943, at a rental of $60 per month during the years 1939, 1940, and 1941, and $65 per month for the years 1942 and 1943. This lease also provided that it was "subject, however, to the unqualified right on the part of said Tenant to terminate this lease at the end of any year of the term above mentioned, accounting from the said 31st day of December, 1939, upon a notice in writing addressed to the said Landlord at her last known address at least sixty days prior to the end of any such year." (This provision was also contained in the lease of October 31, 1933, *supra.*) This lease also contained the following provision: "And it is further agreed that this lease shall continue from term to term at the rental of $65.00 per month unless previously terminated as hereinbefore provided." (This pro-

vision was not included in the lease of October 31, 1933, *supra*.) Neither of these leases was acknowledged or recorded.

Lena Kaplan died intestate on or about June 15, 1940, survived by the appellees in the instant case as her sole heirs at law to whom the property leased descended from the said Lena Kaplan in fee simple. The appellant, Isidor Schultz, the tenant named in the second lease, held over, with the consent of the appellees, after the termination of the first five-year period under the second lease, that is, after December 31, 1943. In May, 1944, the appellees received an offer from some third party to purchase said premises. The appellant, having been offered the property, refused it and asserted that he had a lease of said premises forever, terminable at the end of any year by the tenant only.

In August, 1944, the appellees here filed a bill in equity in Circut Court No. 2 of Baltimore City asking that the aforesaid lease be set aside on the ground of fraud. In the bill of complaint filed the appellees, here, recited the provisions in the lease of October 21, 1938, as to its termination hereinbefore quoted, and made the statement in that bill of complaint "That there is no provision in said lease as to its termination on the part of the landlord or her heirs or assigns. But that the same is operative at the option of the tenant indefinitely." A decree was entered in that equity case dismissing the bill of complaint because of laches "without prejudice to the Complainants to pursue any other remedies that they might have if any, the Complainants to pay the costs of these proceedings."

On January 26, 1946, the appellees here by their attorney sent a registered letter to Isidor Schultz, the appellant here, notifying him to vacate the premises described in the lease on or before February 28, 1946.

On March 7, 1946, the appellees here filed in the Superior Court of Baltimore City a "Declaration and Prayer for Declaratory Judgment" in which they alleged the execution of the aforesaid leases and the terms there-

of, the filing of the bill of complaint in August, 1944, the dismissal of that bill of complaint and the decree thereon, the notice by registered mail to the appellant to quit said premises on February 28, 1946, the failure of the appellant to quit the premises, the desire of the appellees to sell the property and liquidate their assets, the controversy between the parties and the desire of the appellees for a determination of their status and other legal relations under the Uniform Declaratory Judgments Act, Acts of 1945, Chapter 724.

The appellees asked: the recovery of the premises leased and $1,000 for their damages; if the plaintiffs are not entitled to the possession of said land that the court give judgment declaring the second lease void and that the existing tenancy is one from year to year terminable at the end of each year of said tenancy by both landlord and tenant; if said second lease is not void that the court give a judgment declaring that by construction the second lease is terminable by both landlord and tenant at the end of each five-year renewal thereof; if said second lease is not terminable at any time that the court give judgement otherwise declaring the nature of the estates, rights, status and other legal relations of the parties arising under said second lease; and for other and further relief under the said "Uniform Declaratory Judgments Act" as plaintiff's case may require. A demurrer was filed to the declaration on the special grounds that the declaration disclosed on its face a cause of action cognizable only in equity and that plaintiffs had heretofore submitted to the jurisdiction of the equity court which had full power and authority to dispose of all matters essential to the determination of plaintiffs' rights. Judge Dickerson overruled this demurrer. After pleas were filed, the case was heard by Judge E. Paul Mason who found that under the terms of the lease the notice of termination could be given by the landlord as well as the tenant. He entered a judgment that the appellant was in lawful possession of the premises under an extension of the second lease dated October 21, 1938,

which lease unless previously terminated as therein provided may by at least six months' written notice to the defendant, "be terminated by the landlords or their successor in title as of December 31, 1948, or, in their election, as of the last day of any five-year period accounting from said date", and that costs be paid by the plaintiffs. From that judgment the appellant appeals here.

Appellant contends that Chapter 724 of the Acts of 1945, known as the Uniform Declaratory Judgments Act is unconstitutional. The Uniform Declaratory Judgments Act was first adopted in this state by Chapter 294 of the Acts of 1939, codified as Article 31A in the 1939 Code. This Court after the adoption of that Act held that where there exists an immediate cause of action between the parties for which one of the common remedies of law or equity is adequate and available, a proceeding for a declaratory judgment is not appropriate within the contemplation of that Act. *Caroline Street Permanent Building Association No. 1 v. Sohn,* 178 Md. 434, 13 A. 2d 616; *Morgan v. Dietrich,* 179 Md. 199, 16 A. 2d 916; *Brown v. Trustees of M. E. Church,* 181 Md. 80, 85, 28 A. 2d 582. The purpose and intent of Chapter 724 of the Acts of 1945 was to make the Uniform Declaratory Judgments Act concurrent with existing remedies and to declare that the existence of another adequate remedy at law or in equity should not preclude a judgment for declaratory relief in cases in which it was appropriate. *Ryan v. Herbert,* 186 Md. 453, 47 A. 2d 360. Appellant contends that the declaration in the case at bar is really in form and substance a bill in equity and that the procedure in this case is of an equitable nature. He points out that the Circuit Court of Baltimore City under Article 4, Section 29, of the Constitution of Maryland has exclusive jurisdiction in equity within the limits of Baltimore City, and that the declaration here amounts to a bill in equity which is brought in the Superior Court of Baltimore City which has no jurisdiction in equity, and that Chapter 724 of the Acts of 1945 conferring equity jurisdiction on a law court is unconstitutional.

Article 75, Section 3 of the Code provides in part: "Any declaration which contains a plain statement of the facts necessary to constitute a ground of action shall be sufficient * * * without reference to mere form." It is plain that the question raised in the declaration now before us is a legal rather than an equitable question. An effort is made to have the title to real estate adjudicated and to recover possession thereof and this is a legal not an equitable question. *Bernei v. Sappington,* 102 Md. 185, 191, 62 A. 365; *Finglass v. George Franke Sons Company,* 172 Md. 135, 190 A. 752. The appellees also ask a declaration of the legal relations of the parties arising under said second lease.

It was pointed out in the case of *Stinchcomb v. Realty Mortgage Company,* 171 Md. 317, at page 322, 188 A. 790, 792: "[Courts adhere] to the rule that when title is in dispute, and no irreparable damage from the delay in a suit at law is to be feared, the proper jurisdiction is at law." See cases there cited. A bill *quia timet* in equity would not be appropriate, as suggested by the appellant, because the appellees are not in possession of the property in dispute. *Kelly v. Nice,* 141 Md. 472, 119 A. 333; *Keys v. Forrest,* 90 Md. 132, 134, 45 A. 22; *Helden v. Hellen,* 80 Md. 616, 620, 621, 31 A. 506, 45 Am. St. Rep. 371; *Polk v. Pendleton,* 31 Md. 118, 124.

It was said in 1 *Pomeroy, Equity Jurisprudence,* Sec. 177 (5th Ed. 1941): "A suit in equity, under its concurrent jurisdiction, will not be maintained to take the place of the action of ejectment, and to try adverse claims and titles to land which are wholly legal, and to award the relief of a recovery of possession." The legal effect of the lease here before us is purely a legal question. The appellant refers to a quotation from Borchard on Declaratory Judgments at page 238: " 'I cannot doubt that had the Court of Chancery of those days (before 1852) thought it expedient to make mere declaratory judgments they would have claimed and exercised the right to do so.' Again it is both historically and traditionally a power exercised primarily by courts of equity,

and even where exercised by law courts it is largely
equitable in nature. It is so treated by several courts,
which have reserved the fullest liberty in moulding
decrees to the necessities of the occasion, regardless of
the prayer, although only occasionally do they impose
conditions, as in the case of pure equitable decrees." It
must be noted, however, that after the last quotation
Professor Borchard further says: "In truth, the source
of the power ought not to be considered as of any other
than historical importance, for in principle declaratory
relief is *sui generis* and is as much legal as equitable."

It was pointed out in the case of *Caroline Street Perma-
nent Building Association No. 1 v. Sohn,* supra, 178 Md.
434, at page 444, 13 A. 2d 616, decided in 1940 under the
Acts of 1939, Chapter 294, that the object of the declara-
tory judgment act is to supplement and enlarge pro-
cedural relief in a field not wholly or adequately occu-
pied by subsisting remedies of law and equity. The
amendment of 1945 definitely makes that act concurrent
with existing remedies both at law and in equity.

The appellant further contends that the prayers for
relief in the declaration now before this court are incon-
sistent and not of a legal nature. The action here brought
is primarily that of ejectment which is a legal remedy.
Section 1 of Chapter 724 of the Acts of 1945, *supra,* pro-
vides: "1. (Scope.) Courts of record within their re-
spective jurisdictions shall have power to declare rights,
status, and other legal relations whether or not further
relief is or could be claimed. No action or proceeding
shall be open to objection on the ground that a declara-
tory judgment or decree is prayed for. The declaration
may be either affirmative or negative in form and effect;
and such declarations shall have the force and effect of
a final judgment or decree."

It does not seem inconsistent in an action of ejectment
to seek declaratory relief and an adjudication of the
rights of the parties under the lease here before the
court. The declaratory judgment act is available, where
appropriate, whether separately sought or sought in com-

bination with the procuring of an executory judgment or decree. *Caroline Street Permanent Building Association No. 1 v. Sohn, supra,* 178 Md. 434, 444, 13 A. 2d 616; *Chase National Bank v. Citizens Gas Company,* 7 Cir., 1940, 113 F. 2d 217.

Apparently a request for the declaration is often combined with a request for possession. The issue for interpretation may involve the date on which a lease terminates. Borchard, pages 630 and 631. It is said by that writer at page 430: "While. it is not necessary to adopt inconsistent pleadings in order to ask for a declaration, alone or in the alternative or in conjunction with coercive relief, there is no reason why inconsistent pleadings may not, in case of doubt, be adopted. Prayers in the alternative are common."

Among other contentions the appellant claims that because the bill filed in equity by the appellees, asking that the aforesaid lease be set aside on the ground of fraud, contained the statement: "that there is no provision in said lease as to its termination on the part of the landlord or her heirs or assigns; but that the same is operative at the option of the tenant indefinitely", the appellees are bound by the opinion stated in that case even though the bill of complaint was dismissed. The bill of complaint in equity sought to set aside the lease on the ground that it was obtained by fraud. This statement by the appellees as to their opinion of the lease at that time did not, in any way, change the provisions of that lease. The opinion of the appellees does not change the words of the lease. The court in that equity case dismissed the bill of complaint "without prejudice to pursue any other remedies." The appellant did not change his position to his detriment on account of his reliance upon the expression of opinion made by the appellees.

The appellant relies strongly on the case of *Mobberly v. Mobberly,* 60 Md. 376. In that case an action of ejectment was brought against the defendant. The defendant then brought a bill in equity to enjoin that action and

alleged under oath that legal title was in the ejectment plaintiff. An injunction was issued and later dissolved. This court found that as the admission was made that legal title was in the ejectment plaintiff, the defendant in the ejectment suit could not later prove a title by adverse possession. In the case at bar the statement or admission made by the appellees in the bill in equity formed no basis for the adjudication or dismissal of that bill nor according to the record did the appellant take any action on the faith of that admission. Therefore, this admission was not conclusive on the appellees. It was said in the case of *Stinchcomb v. Realty Mortgage Company, supra,* 171 Md. at page 324, 188 A. at page 793: "The admission is admissible as evidence in the second case, but it is not conclusive, unless by reason of its having formed the basis of an adjudication or other action on the faith of it; * * *." See cases there cited. See also *Johnson v. Miles,* 188 Md. 455, 53 A. 2d 30. The appellant has not changed his position to his detriment as a result of the admission made in the equity case.

We now arrive at the crucial question in this case. Code 1939, Art. 21, Sec. 1, provides in part as follows: "No estate of inheritance or freehold * * * or any estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed, acknowledged and recorded as herein provided * * *." We must, therefore, decide whether the lease executed on October 21, 1938, for a period of five years ending on the 31st day of December, 1943, with the provisions, "subject, however, to the unqualified right on the part of said Tenant to terminate this lease at the end of any year of the term above mentioned, accounting from the said 31st day of December, 1939, upon a notice in writing addressed to the said Landlord at her last known address at least sixty days prior to the end of any such year," and "that this lease shall continue from term to term at the rental of $65.00 per month unless previously terminated as hereinbefore provided" and with the tenant holding over until March 7, 1946, when the declaration

in this case was filed, was a lease for more than seven years.

The Maryland cases hold that where leases contain covenants for renewal and a new lease must be executed in order for the tenant to remain in possession of the property, that the newly executed lease does not tack the term of rental in the former lease to the term in the new lease. In the case of *King v. Kaiser*, 126 Md. 213, 94 A. 780, a lease provided for the payment of an annual rent of $50 for a period of five years renewable for an additional period of twenty years at $60 per year. It was contended in that case that the original lease, having been for five years with an agreement of renewal for twenty years, operated as an extension of the original term to a term of twenty-five years. And, therefore, since the lease was not sealed, witnessed or acknowledged that it would not comply with Article 21, Section 1 of the Code. The question before the court in that case was whether the provision mentioned in the agreement was to be regarded as an extension of the term, or an option for another term, or an agreement to lease at a subsequent time for a twenty-year term. The court there concluded that the words "renewal" and "renewable" are controlled by the intention of the parties at the time when the paper is executed. It also concluded that under facts of the case where the terms under the renewal were to be different from those provided in the original lease and attended by different legal consequences and at a different rent it would seem clear that what was contemplated was not an extension of the lease but the giving of a new lease, and that, therefore, the lease was for a five-year period and not contrary to Article 21, Section 1 of the Code.

In the case of *Silberstein v. Epstein*, 146 Md. 254, 126 A. 74, the New Howard Hotel property in Baltimore was subject to a lease for the term of ten years beginning on February 29, 1916, and expiring on February 28, 1926. It contained no provosion for its renewal. In an earlier lease which expired on February 28, 1916,

there was a covenant that the lessee should have the privilege of renewing the lease for another term of ten years at a higher rental. The question to be decided in that case was whether the lessee of the property held under a lease for more than fifteen years in order to acquire the right of redemption. This Court held that as the existing lease was for a term less than fifteen years and there was no provision for renewal it was not within the redemption statute, *supra,* unless the present term be regarded and treated as a continuation of the term which the preceding lease created. This Court concluded in that case, 146 Md. at page 258, 126 A. at page 75: "There has been a continuity of possession under the two leases considered in this case, but the contractual relations of the parties have not been identical during the two periods which the leases designate. The rights of the lessee during the present term must be ascertained from the separate and different agreement under which the property is now possessed. It is clear that no right of redemption can be predicated upon the existing lease since it does not exceed the statutory limitation. No effort to redeem would find support in the preceding lease because it has not survived, by any effective process of renewal without change, the expiration of the specific term to which it was restricted. There is consequently no ground upon which the theory that the lessee may be entitled to procure the fee-simple estate by redemption under the statute can be sustained." See also *Sweeney v. Hagerstown Trust Company,* 144 Md. 612, 620, 621, 125 A. 522.

Where no new lease, however, is required for the tenant to hold over under the old lease a different rule exists. In *Maryland Theatrical Corporation v. Manayunk Trust Company,* 157 Md. 602, 146 A. 805, the lease was dated May 29, 1914, and was for a term beginning on October 1, 1914, and ending on September 30, 1920. At the end of said term of six years the tenant had the right to renew the lease for a further term of eight years, and at the end of said term of eight years

the tenant had the right to renew for a further term of ten years. The rental required for the first term of six years was $6,500 per year, for the extended term of eight years $7,500, and for the extended term of ten years $7,500 per year. The lease also contained a clause that it should be deemed renewed for the aforesaid term of eight years and for the aforesaid term of ten years unless the tenant gave written notice to the landlord on or before a designated date to the contrary. One of the questions in that case was whether the lease was for a period longer than fifteen years to be redeemable. The court there discussed among other cases, *King v. Kaiser, supra, Stewart v. Gorter,* 70 Md. 242, 16 A. 644, 2 L. R. A. 711; and other leading cases. The court there held that according to the weight of authority the question of whether the use of the word "renewal" is to be taken to require the execution of a new contract or whether it is to be construed as meaning an extention of the original term was dependent upon the intention of the parties to be gathered from the language of the lease, the purpose to be accomplished by its execution and the surrounding circumstances at the time of its making. In that case the court quoted from *Underhill on Landlord and Tenant,* Vol. II, Sec. 803, in discussing the difference between the extension of a lease and the renewal thereof. The quotation follows [157 Md. 602, 146 A. 809]: "So, where a lease gives the lessee a renewal at his election, and he elects to continue, a present demise is created which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease should be executed. In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease. The lease must clearly and positively show that the making of a new lease was intended. This must appear from the express language of the parties. The reason for the presumption is the fact that the making of a new lease will involve trouble and expense, which should be avoided

by the courts, if possible, unless it is very clear that the parties had expressly agreed to incur such trouble and expense." The court there said, 157 Md. at pages 614 and 615, 146 A. at page 810, in holding that the lease was for the full twenty-four years and subject to the redemption statutes, as follows: "We are led to the conclusion that it was the intention of the parties to execute a lease for the period of 24 years, which period might be lessened at the pleasure of the lessee to a 6 or 14 year period by his giving the specified notice to the lessor of his intention to restrict its operation to one or the other of those periods. This interpretation, as to the intention of the parties in employing the language they did, is strengthened by the fact that the lease provides that it is a lease for the full 24 years, unless by positive act of the lessee the period be shortened." The court there also held that although the rent during the first six years was $1,000 per annum less than during the succeeding eight years, it was certain and definite, although not uniform throughout the term, it could be made certain and definite by the terms of the lease itself during each day of its continuance. See also *Anderson v. Critcher,* 11 Gill. & J. 450, 455, 37 Am. Dec. 72.

In the case at bar the first lease was executed October 21, 1933, and had no provision for renewal. It was, therefore, necessary to have another lease drawn on October 21, 1938, by attorneys in order for the tenancy to continue. This probably incurred expense for each lease. It is clear that the parties having determined the terms for a second period of five years intended to make sure that they would not have to go to the expense of preparing another lease. No new lease was necessary or intended for the tenant to hold over under the terms of the second lease. No notice was given and the tenant held over. Therefore, under the rule laid down in the case of *Maryland Theatrical Corporation v. Manayunk Trust Co., supra,* and *Anderson v. Critcher, supra,* we find that the lease here in question was for a period longer than seven years and should have been acknowl-

416

edged and recorded under Art. 21, Sec. 1 of the Code, and is void at law. *Cook v. Boehl,* 188 Md. 581, 53 A. 2d 555, at page 560; *Falck v. Barlow,* 110 Md. 159, 162, 72 A. 678, 17 Ann. Cas. 538; *Anderson v. Critcher, supra; Tiffany, Landlord and Tenant,* Section 33, note 614.

The lease being invalid the question would arise as to whether the tenancy is one from year to year or month to month. However, this question is not before us here. The judge below held the lease terminable at the end of the five-year period ending in 1948. As the appellees, the landlords, took no appeal the judgment must be affirmed even though to them it might be erroneous and injurious. *Hammond v. Piper,* 185 Md. 314, 321, 44 A. 2d 756; *Hajewski v. County Com'rs of Baltimore County,* 184 Md. 161, 166, 40 A. 2d 316. Whether in equity, this lease void in law, could be construed as a contract to lease and could be specifically enforced are questions not before us, and on which we express no opinion.

*Judgment affirmed, with costs.*