## CITY OF NORTH MUSKEGON v. MILLER.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—LICENSES—LEGALITY—OIL AND GAS WELLS.

    Right to secure oil, gravel, or mineral from one's property may not be destroyed or withheld through zoning ordinances, unless some very serious consequences will follow therefrom.

---

As to effect of creation by statute or ordinance of restricted residence district within municipality from which business buildings or multiple residences are excluded, see annotation in 19 A. L. R. 1395; 33 A. L. R. 287; 38 A. L. R. 1496; 43 A. L. R. 668; 54 A. L. R. 1030.

2. SAME—ZONING ORDINANCES MUST BE REASONABLE.

It is necessary that zoning ordinance be reasonable, and reasonableness becomes test of its legality, since any ordinance to be legal must be reasonable.

3. SAME—ZONING ORDINANCE UNREASONABLE AND CONFISCATORY IS ILLEGAL.

Zoning ordinance which, by restricting use of low, marshy land to single family dwellings, churches, schools and libraries, farming and truck gardening, and private clubs, renders land almost worthless, is unreasonable and confiscatory, and therefore illegal.

4. SAME—LICENSES—ORDINANCES—ADOPTION OF ORDINANCE.

City ordinance making it unlawful to drill wells for gas and oil without first securing permit from city council, which was validly passed by majority of council, was legally adopted, notwithstanding failure of mayor and clerk to sign it and failure of chief of police to file certificate of posting prior to commencement of suit testing its validity, in compliance with charter, since mayor and clerk may not indirectly exercise veto power not given by charter, and posting of ordinance is not essential to its validity under charter.

5. SAME—CITY HAD RIGHT TO REFUSE PERMIT TO DRILL OIL WELL NEAR CITY WATER WELL.

City ordinance requiring permit from city council to drill for oil and gas is legal and reasonable, and council had right to refuse permit to drill well in vicinity of well from which large part of city water supply was secured, which might thereby be endangered.

Appeal from Muskegon; Vanderwerp (John), J. Submitted June 11, 1929. (Docket No. 79, Calendar No. 34,257.) Decided December 4, 1929.

Bill by the City of North Muskegon, a municipal corporation, against Royal R. Miller and Virgil M. Voorhees to restrain drilling for an oil well within the corporate limits. From a decree for plaintiff, defendants appeal. Affirmed.

*Cross, Foote & Sessions,* for plaintiff.

*George S. Lovelace,* for defendants.

BUTZEL, J. Plaintiff, a municipal corporation, brought this suit to restrain defendants from drilling an oil well on property in the city of North Muskegon. In 1925 plaintiff passed a zoning ordinance, by virtue of which the property on which it was sought to drill the oil well was restricted in its use to single family dwellings, churches, schools, and libraries, farming and truck gardening and private clubs. In 1928, shortly after oil had been discovered within the corporate limits of plaintiff, an ordinance was passed making it unlawful to drill wells for the purpose of obtaining oil and gas without first securing a permit from the council of plaintiff. Notwithstanding these two ordinances, defendant Miller, as lessee of the property, in the year 1928, together with defendant Voorhees, an oil drilling contractor, after two unsuccessful efforts to secure a permit from the city, proceeded to drill an oil well without a permit on property herein described. This suit was brought by the plaintiff to restrain defendants from proceeding with their drilling operations, and, after a hearing, a final decree was entered permanently enjoining defendants from drilling the well. Defendants have appealed.

Defendants claim that both the zoning ordinance and the oil drilling ordinance were not properly adopted, and therefore are of no force and effect; that the zoning ordinance is unreasonable and unwarranted by the police power; and that it violates section 16 of article 2 of the Constitution of the State of Michigan and the provisions of the Fourteenth Amendment to the Constitution of the United States.

They further claim that oil drilling permits had been given to others in other sections of the city, and that the refusal to give defendants such permit was discriminatory, and therefore illegal.

In order to properly discuss the reasonableness of the zoning ordinance in its application to the property in question, it is necessary to give a full description of the property. The city of North Muskegon lies on a strip of land between Bear lake on the north and Muskegon lake on the south. Running through the length of this strip and crossed at right angles by Center street is Ruddiman avenue, the principal thoroughfare of the city. Practically all the land west of Center street has been zoned as a district devoted solely to residences. The property in question in this case is a portion of the Beaudry, Vallicotte, and Haines subdivision, which lies about 5,000 feet west of Center street, extending from Ruddiman avenue south to the edge of Lake Muskegon, a distance of about 950 feet. About 250 feet south of Ruddiman avenue, and 700 feet from the water, the land falls away in a bluff which seemingly runs the entire length of the peninsula. The land under the oil lease is a part of the lowlands between the bluff and the water. The oil well was being sunk at a point variously estimated at from 300 feet to 600 feet from Ruddiman avenue, but shown by the zoning map to be about 800 feet from Ruddiman avenue, 550 feet from the bluff, and 150 feet from the water.

Adjacent to this lot on the lowland to the east is the city dump for refuse and garbage, which Foote, the owner of the fee in the oil lands, testifies at various times gives off a very unpleasant odor. Two hundred twenty-two feet to the west of the oil well is a water well which furnishes about one-half of the

city's water supply. Seemingly bordering the land on the west is a clump of trees known as Bigelow's grove, which partially shields the proposed oil well from the view of a few new houses erected on Ruddiman avenue about two blocks west. A little less than a mile west of the proposed oil well is Interlaken, the most active of the better residential subdivisions.

Until 1892 the lowlands were used by the lumber companies for their docks and mills. They have been abandoned, the old docks remaining, but the land given over to brush, scrub timber, and old logs. At least a portion of the lowland is marsh. Foote stated that the land in front of the oil well was marshy. The photographs put in evidence indicate the lowland, of which the property in question is a part, to be practically a barren waste, partly marsh, uncultivated and unimproved, even when allowance is made for the fact that the photographs were probably taken from points most advantageous to the defendants.

The land along the bluff on Ruddiman avenue is fairly well built up with substantial residences, two of them being on the Beaudry, Vallicotte and Haines subdivision. Along the lowland, however, for a distance of a mile and a half east there are only 13 houses, 4 of them belonging to Foote, and on the Beaudry, Vallicotte and Haines subdivision. Of these 13, 9 have been built at least 24 years, and were regarded for over 20 years to be mere shacks. Only one is used as a permanent residence, the others being summer cottages. In regard to the use of this land as a summer resort, Foote testified that the water about the old dock was 40 feet deep, while another witness who claimed to have measured it stated it was 3 feet deep.

Despite testimony of increased building activity

and large strides in population and assessed valuation of the property in the city during the past few years, Foote testified that his land had not increased in value in 21 years.

Practically all the witnesses agreed that the lowland was useless for residence purposes. The principal reason for maintaining this property in the residence zone appears to be that the rear of the property on the bluff overlooks it, and that the masts of the oil derricks temporarily used in drilling operations would be visible from Ruddiman avenue.

It will be readily seen that the property in question is almost worthless if its use is to be restricted as provided in the zoning ordinance. The courts have particularly stressed the importance of not destroying or withholding the right to secure oil, gravel, or mineral from one's property, through zoning ordinances, unless some very serious consequences will follow therefrom. *Village of Terrace Park* v. *Errett* (C. C. A.), 12 Fed. (2d) 240. The effect of the zoning ordinance in the cause at issue amounts almost to a confiscation of the property. The legality of a zoning ordinance, when reasonable, has been long recognized by our courts. Although the question is comparatively new in Michigan, its legality has been upheld a number of times. *Adams* v. *Kalamazoo Ice & Fuel Co.*, 245 Mich. 261; *Dawley* v. *Ingham Circuit Judge*, 242 Mich. 247. Zoning ordinances have been upheld by the United States Supreme Court in many instances, the leading case being that of *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365 (47 Sup. Ct. 114, 54 A. L. R. 1016). It is, however, necessary that a zoning ordinance be reasonable, and the reasonableness becomes the test of its legality. Any ordinance to be legal must be reasonable. *People* v. *Armstrong*, 73 Mich. 288

(2 L. R. A. 721, 16 Am. St. Rep. 578). The authorities are numerous on this subject.

"Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities." *Washington, ex rel. Seattle Title Trust Co., v. Roberge*, 278 U. S. 116, 121 (49 Sup. Ct. 50).

"For the purpose of this case it may be conceded that the village, in the exercise of its police power, either delegated to it by statute or vested in it by the Constitution of Ohio, has authority to pass a zoning ordinance reasonably necessary for the preservation of public health, morals, or safety  *  *  * where such necessity appears either from existing conditions or reasonable anticipation of future growth and development. But it does not follow that it can exercise that power in such an arbitrary and unreasonable manner that the ordinance will be unconstitutional in its operation and effect. *Youngstown* v. *Kahn Bros. Building Co.*, 112 Ohio St. 654 (148 N. E. 842, 43 A. L. R. 662). In such event the owner of property whose constitutional rights are invaded thereby is entitled to the same relief that would be given him if the statute conferring the power were unconstitutional. *Oklahoma Natural Gas Co.* v. *Russell*, 261 U. S. 290, 292 (43 Sup. Ct. 353)." *Village of Terrace Park* v. *Errett, supra.*

"An inspection of the plat of the city upon which the zoning districts are outlined, taken in connection with the master's findings, shows with reasonable certainty that the inclusion of the locus in question is not indispensable to the general plan. The boundary line of the residential district before reaching the locus runs for some distance along the streets, and to exclude the locus from the residential district requires only that such line shall be continued 100 feet further along Henry street and thence

south along Brookline street. There does not appear to be any reason why this should not be done. Nevertheless, if that were all, we should not be warranted· in substituting our judgment for that of the zoning authorities primarily charged with the duty and responsibility of determining the question. *Zahn* v. *Bd. of Public Works,* 274 U. S. 325, 328 (47 Sup. Ct. 594), and cases cited. But that is not all. The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, and morals, or general welfare.'' *Nectow* v. *City of Cambridge,* 277 U. S. 183, 188 (48 Sup. Ct. 447).

A careful inspection of the map of the restricted property involved in the present case convinces us that the zoning ordinance is unreasonable, as far as this particular piece of property is concerned. The city of Muskegon itself has shown its lack of regard for the property by using a parcel almost adjacent thereto as a dumping ground for garbage and refuse. The property consists of marshy lowlands, which are unfit for the purposes to which they are limited by the zoning ordinance. We only pass upon the question of the reasonableness of the zoning ordinance as applied to the particular section of the city where this property is located. We find that the zoning ordinance as applied to the property in this case is unreasonable and confiscatory, and therefore illegal. Having come to this conclusion, it becomes unnecessary for us to discuss the regularity of the proceedings by which this ordinance was adopted.

We next come to the question of the regularity of the adoption of the drilling ordinance. Under the

charter of the city of North Muskegon, it is provided in sections 4 and 5 of chapter 6 as follows:

"Section 4. Immediately upon the final passage of any ordinance, the mayor and clerk shall sign the same under a certificate of the day and date of its passage.

"Section 5. All ordinances, except as otherwise herein provided, shall be posted within one week of their passage in five public places within the city, and the clerk shall certify on the record of ordinances, the date of such posting and the places where the copies of the ordinance was so posted; and such certificate shall be *prima facie* evidence that legal publication has been made."

At the hearing of this case it was shown that the mayor and clerk had not signed the ordinance prior to the institution of the suit, and that there had been no certificate of posting filed, in accordance with section 5 hereinabove quoted. The mayor and the clerk did sign the ordinance, and the clerk and chief of police filed a certificate of posting prior to the hearing of the case.

The drilling ordinance was legally adopted. It did not require any further action except the ministerial act of certification and authentication by the mayor and clerk. The validity of this ordinance did not depend upon their signatures, for the charter does not provide for the right of veto by the mayor. While it would have been proper and better practice for the mayor and clerk to have certified to the passage and authentication of the ordinance, and it would have been *prima facie* evidence of its legal publication, nevertheless, the failure to do so, until after this case had been begun, does not invalidate the ordinance had been validly passed by a majority the ordinance. Evidence was offered to show that

of the council. The mayor and clerk could not indirectly exercise a power of veto which is not given them by the charter through a neglect to certify to the ordinance.

The charter of plaintiff does not make the posting of an ordinance essential to its validity. In the case of *Vernakes* v. *City of South Haven,* 186 Mich. 595, an ordinance, without the publication thereof, was held valid because there was no provision in the city charter requiring such publication as a condition precedent to the ordinance taking effect. The court in that case held:

"The following Michigan cases have held publication essential to the validity of ordinances: *People* v. *Keir,* 78 Mich. 98; *Richter* v. *Harper,* 95 Mich. 221; *Van Alstine* v. *People,* 37 Mich. 523. But an examination of these cases discloses the fact that in each case the charter provided that the ordinance should not take effect until after publication. In the instant case there is no provision that the ordinance shall not take effect until after publication."

In a further quoting from the case of *Stevenson* v. *Bay City,* 26 Mich. 44, it is said:

" 'In the absence of a clear provision to the contrary, a provision in the charter of Bay City, requiring ordinances and the date of their publication to be recorded, and the record signed by the mayor and recorder, was held not to make such record a condition precedent to the validity and operation of an ordinance regularly adopted by the common council. * * * An ordinance lawfully adopted cannot be defeated by the omission of such a ministerial duty; for, otherwise, either mayor or recorder would be able to control or delay the legislation of the city by his individual action, and would possess a practical veto power not conferred or contemplated by the charter.' "

This principle has been approved of in *Red Star Motor Drivers' Ass'n* v. *Detroit,* 244 Mich. 480, 496.

The claim is made that the drilling ordinance has the same fatal defects as the zoning ordinance in its

application to this property. We find nothing unreasonable in the drilling ordinance, unless there should be some discrimination or other defect arising through its application in the present case. No discrimination whatsoever has been shown in refusing defendants a permit to drill an oil well. It is true that permits were issued by the city to owners of property in a different section far removed from the property in question. Others had been refused permission to drill oil wells in the same locality as defendants' land. There was no discrimination.

We have passed upon the legality of the zoning ordinance, as far as applied to the particular section of the city in which this piece of property is located, so that, if the question again arises, a refusal to permit the drilling of an oil well may in no way be influenced by the provisions of the zoning ordinance. A permit may have been refused largely on account of the zoning ordinance. However, the record gives another reason for the refusal.

The drilling ordinance expressly gave the council the power to issue or refuse permits for drilling for oil or gas. While the drilling ordinance was adopted so as to make the zoning ordinance more effective, nevertheless, its provisions are sufficiently broad so as to give the council the power to refuse a permit for any good reason.

The record shows that one of the two sources of water supply for the city is from wells under lands that are almost contiguous to the property in question. There is testimony, although disputed, that the drilling of the oil well and the raising of the brine from the well might endanger the city water supply and result in contamination of the water well. This would be sufficient reason for the refusal to give a permit to defendants. It may be possible, as expert witnesses testified, to remove all danger of con-

tamination by the proper use of overflow pipes, etc., and it may be possible that defendants can satisfy the city officials of their ability to overcome all danger of such contamination. It seems unfortunate that, if there is oil under this marshy land, it should not be made use of, both for the benefit of plaintiff as well as defendants. However, this is a matter which is purely administrative, and it is not within our province to regulate the action of the city officials when they act within their legal rights. We find the zoning ordinance illegal and void as to the particular section of the city in which this property is situated. We find the drilling ordinance both legal and reasonable, and, in this instance, the city council had a right to refuse the giving of a permit. For this reason, we affirm the decision of the lower court, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.