(No. 21807.—
HERBERT R. TEWS, Trustee, *et al.* Appellees, *vs.* H. L. WOOLHISER, Appellant.

*Opinion filed April 22, 1933.*

TOLMAN, CHANDLER & DICKINSON, (EDGAR B. TOL-MAN, FREDERICK DICKINSON, HOWARD B. BRYANT, and WALTER V. SCHAEFER, of counsel,) for appellant.

HELMER, MOULTON, WHITMAN & HOLTON, (ROLAND D. WHITMAN, and HERBERT R. TEWS, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellees applied to appellant, as superintendent of public works of the village of Winnetka, for a building permit to construct a gasoline and oil automobile filling station upon block "A," Manus' Indian Hill subdivision of that village, hereinafter designated as block "A." They filed with that application plans and specifications and the fee required by the ordinance of the village. Permit was refused on the ground, as stated, that the property on which the applicants propose to erect the gasoline station lies in the "A"-1/6 acre residential zone under the zoning ordinance, and by that ordinance such use as appellees sought to make of the tract is excluded. Appellees thereupon filed in the circuit court of Cook county a petition for writ of *mandamus* to compel appellant to issue the permit applied for. On hearing, the court awarded the writ and certified that the validity of a municipal ordinance of the village is involved and that public interest requires the same be passed upon by the Supreme Court, and an appeal was allowed to this court.

The petition alleges that plans and specifications and a plat were attached to and filed with the application for building permit; that they comply with the ordinances and building regulations for erecting a one-story three-room gasoline filling station on block "A;" that the applicants are the owners of block "A," and that it was the duty of appellant, as superintendent of public works, to issue the building permit. The petition further alleges that the zoning ordinance of the village of Winnetka, in so far as it

zones block "A" to single residence use and restricts the same to such use, deprives appellees of their property without due process of law, denies them equal protection of the law, contrary to the constitutions of the United States and of this State, and amounts to taking appellees' property for public use without just compensation, contrary to the constitution of this State.

Appellant in his answer denied that appellees had complied with all the ordinances of the village applicable to the construction of a gasoline station and denied the invalidity of the zoning ordinance.

The cause presents the following principal questions here: (1) Whether the zoning ordinance of the village, as applied to block "A," is a proper exercise of the police power vested in the council of the village; (2) whether appellees complied with all the applicable ordinances of the village in force at the time of the application for the building permit; (3) whether the order directing the issuance of the writ is void as granting relief not prayed for or because it cannot be complied with; and (4) the correctness of the rulings of the court on the admissibility of evidence.

Manus' Indian Hill subdivision, of which block "A" is a part, was annexed to the village of Winnetka in 1925. Prior thereto a zoning ordinance had been adopted by the village, and the subdivision by annexation became subject thereto, and thereby block "A" became restricted to "A"-1/6 acre residence use. In 1927 the village adopted a comprehensive zoning ordinance amending the existing ordinance in numerous particulars. By it block "A" was zoned to "A"-1/6 acre residence use. Block "A" is a parcel of land, triangular in shape, lying in the southeast corner of the intersection of Winnetka avenue, an east and west street, with Center street, a northwesterly and southeasterly street. It has a frontage on Winnetka avenue of approximately 85 feet. Its easterly boundary extends a distance of 163.1 feet along the southwesterly right of way of the Chicago and

Northwestern Railway Company. It has a curved boundary line abutting on the east line of Center street of 269.65 feet. Its area is approximately 4400 square feet. Adjoining the right of way of the Northwestern Railway Company on its easterly boundary are the double tracks of the Chicago North Shore and Milwaukee Railroad Company, an electrically operated road. Immediately east of the latter tracks is the Indian Hill station of the electric line. Immediately east of this station, for a distance of approximately 75 feet, are shops and stores, with apartments over them, zoned for "C"-Commercial use. On the north side of Winnetka avenue, immediately opposite these stores and apartments, is a public park abutting on the easterly line of the right of way of the electric line. All other property east of the railroads and north and south of Winnetka avenue for a distance of about one-half mile, with the exception of a high school site, is zoned for residence purposes. Center street is a through street 70 feet in width, improved with reinforced concrete pavement 50 feet wide, and forms a part of a through highway extending through the village and connecting with the State system of highways. On the west side of Center street, from Winnetka avenue south for a distance of approximately 1000 feet, all lots fronting on Center street are zoned for "C"-Commercial use. The east line of Center street from block "A" south for a distance of more than 1000 feet abuts on the westerly line of the right of way of the Chicago and Northwestern railroad. Brier street, at the point opposite block "A," is a north and south street, which enters Center street about 50 feet south of the intersection of Center with Winnetka avenue. At this southwest corner of the Winnetka and Center intersection the property on Winnetka for a distance of 110 feet is zoned for commercial use and is occupied by a gasoline filling station. In the northwest corner of the intersection of Winnetka and Center the property facing Winnetka for a distance of over 285 feet is zoned for com-

mercial use, as is the property on Center street for a distance of over 700 feet. In the northeast corner of the intersection is a strip of land lying between Center street and the Chicago and Northwestern railroad, 120 feet in width and over 700 feet in length. This land is owned by the railroad company and leased to the park district at a nominal rental, with right in the railroad company to terminate the lease at any time on notice. The southern 200 feet of this strip, facing Center and Winnetka, is largely used as a cinder-covered parking space for automobiles, for the use of the general public and patrons of the railroad.

The location and surroundings of block "A," on which this filling station is sought to be erected, are so unusual that reference to the following plat is necessary to give a clear understanding of them:

The shaded portions shown on the plat are zoned for "C"-Commercial uses. Those portions unshaded are zoned for "A" residence or park purposes. As stated, 200 feet of the property lying in the northeast corner of the intersection of Center street and Winnetka avenue, and adjacent to the railroad company, is leased to the park district but is subjected to the non-conforming use of a cinder parking space. Appellees propose to erect on the northeast corner of block "A," at the intersection of Winnetka avenue and the railroad right of way, a single-story filling station, approximately 20 feet on Winnetka by 32 feet on the railroad right of way.

The evidence shows that for residence use the property is practically worthless, one witness stating that it might be worth $100. The evidence also shows that appellees have entered into a lease with a gasoline refining company for the use of block "A" as a gasoline filling station at a minimum rental of $200 per month, with certain additional rental based on the amount of gasoline sold. Based on that rental, the evidence is that the property is worth for commercial purposes $33,000. The evidence also shows that appellees petitioned the village council of Winnetka to have block "A" re-zoned as "C"-Commercial use; that the village council referred the petition to the zoning commission of the village, who reported that they had held a public hearing on the petition and were unanimously of the opinion, and so recommended to the village council, that an ordinance be passed re-zoning block "A" to "C"-Commercial uses, "on the grounds that it is useless as residential property because of its shape, size and location, and that it is highly unjust and improper that it remain so zoned." The village council did not amend the ordinance by re-zoning block "A" but instead gave notice through its board of local improvements that a hearing would be had on a resolution of the board to condemn block "A," and when condemned the land to be improved in accordance with a

drawing filed in the office of the clerk of the village. This drawing was introduced in evidence, and shows that the village proposed, on condemning this property, to make it a public parking place for automobiles, and that it be divided into spaces or stalls, twenty-seven in number, twelve of them to face on Winnetka avenue.

It is apparent from what has been stated and from the plat shown here, that block "A," though zoned to residential use, is situated in a locality entirely surrounded by property devoted to or zoned for commercial uses and abuts on a right of way of one of two double-track railroads, over which hundreds of trains pass daily. The crossing at Winnetka avenue is protected by gates, and when these are down heavy crossing bells ring continuously. The evidence shows that the traffic on Center street is quite heavy; that shortly prior to appellees' application for a building permit this street was widened and paved for the purpose of drawing the heavy north and south-bound traffic to it and thus free the balance of the village from such traffic. Though the commercially zoned territory along Center street at this point was not shown to have been improved, at the time of the hearing, by business buildings other than herein described, the evidence indicates that the widening and paving of that street will attract business to this point.

Can an ordinance be sustained as a valid exercise of the police power which zones property to a use to which it cannot be put and thereby renders it useless and valueless for any purpose while so zoned? It is conceded by the most zealous of appellant's witnesses that block "A" is not fit for residence purposes, as, indeed, an examination of the plat alone is sufficient to demonstrate. This court has frequently approved reasonable restraint, by zoning, upon the uses to which private property may be put. These restrictions are based on the public welfare. The right of the individual to use his property as he sees fit must give way to the reasonable exercise of the police power. In

determining whether such exercise is reasonable or unreasonable the public welfare is a dominant consideration. If it appear that the restrictions bear substantial relation to the public health, safety, morals or general welfare, such fact is determinative of the validity of the restrictions regardless of the fact that individuals may suffer an invasion of their property rights. (*Forbes* v. *Hubbard,* 348 Ill. 166; *Binder* v. *Hejhal,* 347 id. 11; *Michigan-Lake Building Corp.* v. *Hamilton,* 340 id. 284.) But we have also uniformly held that highly injurious restrictions lacking basis in the public good come within the constitutional inhibition against taking private property for public use without just compensation. *Forbes* v. *Hubbard, supra,* and cases there cited.

Counsel argue that the erection of a gasoline station would greatly increase the congestion of traffic, already heavy, at the intersection of Winnetka avenue and Center street. Some witnesses so testified, while others testified that it would tend to slow up traffic there and thus lessen the danger of high-speed traffic. It appears that the municipal authorities have wired this intersection for "Stop" and "Go" lights, though at the time of the hearing these had not been installed. Congested traffic conditions, however, scarcely constitute an argument in support of the limitation of block "A" to residence use, since such conditions rather argue its unfitness for such use. The natural conclusion to be drawn from most of the testimony of appellant's witnesses is that the property should be purchased or condemned by the village and devoted to traffic, free from any other use.

Counsel for appellees argue that the village is estopped to make claim that a filling station will endanger traffic for the reason that the village proposes to condemn the land and use it for a parking place for automobiles, which would not only be a commercial use but would more greatly ob-

struct a view of the crossing than would a residence or gasoline station in the extreme northeast corner of the property as here proposed. They also argue that the village proposes to condemn this property while limited to a use for which it is valueless and so procure it at an unfair price. Regardless of the force of that argument, this court may not consider the motives of the village board in the matter. The question here, and the only one which this court may decide on this branch of the case, is whether the zoning ordinance as applied to block "A" is a valid exercise of the police power.

Counsel for appellant argue that before the zoning ordinance can change this property from residence to commercial use it is incumbent upon the owner to show, first, that there is an insufficient amount of property zoned for commercial use in the neighborhood; second, that public health, safety and general welfare of the village require that the property be re-zoned to a different use; third, that the public good requires that an additional gasoline station be placed on this property; fourth, that the value of residence property in the neighborhood will not be lessened or depreciated; and fifth, that the congestion of traffic will by re-zoning be lessened or avoided.

It may be first observed that courts may not amend ordinances, as such is the function of the legislative department of a city or village. All of the questions suggested properly arise where the owners of property once reasonably zoned, seek, by amending the ordinance, to change the zoning of their property. The question here is whether the zoning ordinance, by placing the single-residence restriction on block "A" and at the same time zoning practically all property surrounding it for commercial uses, is a valid exercise of the police power. The points sought to be made by counsel for appellant, and the cases cited by them, contemplate a zoning ordinance once valid but which it was sought to amend.

It must not be overlooked that zoning which courts can approve must have as its basic purpose the setting aside of areas of property for specific uses. Zoning which admittedly limits property to a use which cannot reasonably be made of it cannot be said to set aside such property to a use but constitutes the taking of such property without just compensation. Use of property is an element of ownership therein. Regardless of the opinion of zealots that property may properly, by zoning, be utterly destroyed without compensation, such principle finds no support in the genius of our government nor in the principles of justice as we know them. Such a doctrine shocks the sense of justice. If it be of public benefit that property remain open and unused, then certainly the public, and not private individuals, should bear the cost of reasonable compensation for such property under the rules of law governing the condemnation of private property for public use. It lies not within the power of a municipality to so zone property as to render it worthless. Such is not zoning—it is confiscation. (*Forbes* v. *Hubbard, supra; State* v. *Gurda,* 243 N. W. (Wis.) 317.) In deciding whether the invasion of property rights under a purported police power is unreasonable and confiscatory, the degree in which the values incident to the property are diminished by the provisions of the zoning ordinance may be considered. (*Forbes* v. *Hubbard, supra; Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393; *Village of Euclid* v. *Ambler Realty Co.* 272 id. 365; *People* v. *Village of Oak Park,* 331 Ill. 406.) The effect of the opinion of appellant's expert witness is that this property should remain under its present restrictions because it would be unreasonable to use it for any other purpose, though he admits that it is not a reasonable site for residence purposes and that it would be undesirable and dangerous to health as a residence. Such an opinion finds no sanction in the law. No one will contend that a residence structure worthy of the name could without continuous loss

be erected and maintained on block "A." Only those drawn by the necessarily low rentals charged could be induced to reside there. The weight of the evidence shows, if evidence were needed, that a residence justified by the rentals which could be obtained would be a discredit to the village and a greater menace to the values of other residence property than a gasoline station of the character described in this record.

The principles involved in this case are well settled in this State by the cases herein cited and further reference to those principles need not be made here. We are of the opinion that the zoning ordinance as applied to block "A" is unreasonable and void and affords no justification for refusal on the part of appellant to issue the building permit sought herein.

Appellant also argues that appellees have not, in their application for a building permit, complied with all applicable ordinances of the village, in that the drawings of the ground plan filed with the application for permit show that three tanks of one thousand gallons each are to be put in the ground at points less than ten feet from the property line, which is contrary to the village ordinance on the subject. Appellant's counsel, citing numerous cases of this court, argue that unless compliance with such ordinance is shown, *mandamus* will not lie. It is the rule in this State that to entitle an applicant to a building permit he must show compliance with all applicable ordinances and submit plans and specifications in accordance therewith. (*Mills* v. *White,* 304 Ill. 256; *People* v. *City of Chicago,* 280 id. 576; *People* v. *Busse,* 248 id. 11.) It appears here, however, that under paragraph (*a*) of section 821 of the municipal ordinances of Winnetka introduced in evidence a separate permit is required before underground tanks may be installed, and an application for such separate permit must be made giving full information as to the location, size, type and construction thereof. This ordinance also fixes the fee to be paid for such permit. The 'application

in this case is for a permit to build a gasoline station. The order appealed from does not direct the issuance of a permit to install tanks. While it directs the issuance of a permit for the erection of the gasoline station and its equipment, it cannot be construed as ordering a permit to place underground tanks when no such permit has been applied for. While the plat attached to the application has designated certain places for tanks, yet no authority would exist for placing such tanks, even though the plat showed the distance from the property line to have been in compliance with the ordinance, for the reason that no application has been made for a permit to install tanks. That feature of the plat is therefore without effect so far as the present application is concerned. If tanks are to be installed such must be done under a permit separately applied for. Counsel argue that such tanks are a constituent part of a gasoline filling station, and a permit to build such a station necessarily carries with it permission to place the tanks underground. Such cannot be said to have been the intent of the framers of the village ordinances, since those ordinances require a separate permit to install tanks of more than fifty gallons' capacity. Whether the owners or lessees of block "A" ever put in tanks, or why they may wish to build a station without them, is of no concern to the court and was of no concern to appellant. It was his duty to issue the permit when the building ordinances applicable to such a structure were complied with. If appellees or their lessees wish to put in tanks, it will, of course, be necessary that they apply for and receive a permit to do so.

What we have said disposes, also, of the objection that the order of the circuit court cannot be complied with. That order is that the permit issue in accordance with the village ordinances. Since the only contention as to failure to comply with the village ordinances applies to the underground tanks, which contention we hold has no bearing

224

on the duty of appellant in this case, there is no difficulty in complying with the court's order.

Objections are also raised to certain testimony admitted in evidence, some of which was not material to the issues involved in the case. The hearing was before the court without a jury, and it will not be presumed that the court was influenced in its decision by incompetent testimony. Most of the testimony objected to related to conditions surrounding this property and the attitude of the parties pertaining to it. In cases of this character, where the question is the reasonableness of the exercise of police power, it is proper that the court give full consideration to existing conditions. We are of the opinion that there has been no error in ruling on evidence which requires a reversal of the judgment.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*