C. ELLIS ELLICOTT, ET AL *v*. MAYOR AND CITY
COUNCIL OF BALTIMORE, ET AL.

[No. 50, October Term, 1941.]

*Decided January 13, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Douglas H. Gordon* and *H. Warren Buckler, Jr.,* with whom was *W. Harvey Small* on the brief, for the appellants.

*Wilson K. Barnes, Assistant City Solicitor* and *Paul F. Due,* with whom were *Charles C. G. Evans, City Solicitor* and *Due, Nickerson & Whiteford* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellants, including owners of property in Baltimore City in an area zoned as a residential district, and a taxpayer, appealed to the Baltimore City Court from a ruling of the Board of Zoning Appeals of the City authorizing the establishment of a filling station on a single lot in the district, and from an affirmance of the ruling below appeal to this court. The lot is 100 feet by 145 feet in size, and by an ordinance of the city, No. 323, was rezoned as a first commercial district, and the appellants attack both the validity of the ordinance and the Board's action in the exercise of a discretion vested in it by an amending ordinance, No. 318, par. 34, 34A, and 34B, to allow or deny particular locations of filling stations.

The lot is at the south-east corner of Greenspring Avenue and Cold Spring Lane. It is in a region lying north of Druid Hill Park, which has remained in comparatively rural conditions, with the land still held in large parcels, with much woods, and scattered residences except for a few small dwellings built along Greenspring Avenue. The area has always been zoned as a residential district under the zoning ordinance No. 1247, of 1931, and plans of the City Planning Commission, Code, Art. 66B, Sec. 10 etc., contemplate widening Greenspring Avenue to provide a dual residential highway to the country beyond. Cold Spring Lane has in recent years

been opened as a wide highway connecting the more thickly settled sections to the east and the west. The nearest development in Cold Spring Lane, one of dwellings, is from 500 to 600 feet from the lot under discussion. Much regrading would be necessary to adapt the land along the roads to use for more closely built residences. But it seems inevitable that land so far within the city limits must soon be so built up, and the general residential zoning appears to be planned for the future. It is none the less proper and effective for that. *Leahy v. Inspector of Buildings,* 308 Mass. 128, 132, 31 N. E. 2d 436; *Zahn v. Board of Public Works,* 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074; *State of Washington v. Roberge* 278 U. S. 116, 121, 49 S. Ct. 50, 73 L. Ed. 210, 86 *A. L. R.* 654.

At the crossing of the two roads there are now no improvements. Billboards, an existing non-conforming use in 1931, not interfered with in the zoning (Par. 11, Ord. No. 1247), stand nearby on Greenspring Avenue, and a ravine in the land on the southeast corner has been largely filled up by the dumping of non-perishable material of many kinds.

A first question is whether the appellants can raise, on an appeal from the Board of Zoning Appeals, and from the Baltimore City Court, the objections they make to the validity of the ordinance No. 323. The Board, as an agency of the City, was bound by the ordinance, and did not decide the question of its validity. On appeal from its decision, can that question be raised? Section 7 of the general enabling act for zoning, Code, Article 66B, provides that any persons jointly or severally aggrieved by a decision of the Board, or any taxpayer, may present to a court of record a petition setting forth that such decision is illegal, and that from any decision of that court an appeal may be taken to the Court of Appeals; and paragraph 35, sub-section (a), of the zoning ordinance, No. 1247, repeats this authorization, but designates the Baltimore City Court as the proper court of record. The provision was originally enacted along with an authori-

zation to the Board of Zoning Appeals to allow special variations from the zoning of a district (Ord. 1247, Par. 12 and 33), and the validity of a variation could then, of course, be questioned on the appeal from its decisions. Since the decision in *Sugar v. North Baltimore Methodist Protestant Church*, 164 Md. 487, 165 A. 703, holding this delegation of power to make variations unconstitutional, the making of them has been referred to the legislative power of the City (Bassett, Zoning, 145), and hence the question of the forum for attacking the validity of its action arises.

In many cases this court has held that an appeal from the decision of a municipal board acting under an ordinance of the City is not the appropriate proceeding for testing the validity of the ordinance. The court has said that the person aggrieved "may and ought" to go into equity, or that equity has jurisdiction. *Holland v. Mayor of Baltimore*, 11 Md. 186, 197, 68 Am. Dec. 195; *Mayor v. Porter*, 18 Md. 284, 301, 79 Am. Dec. 686; *Page v. Mayor of Baltimore*, 34 Md. 558, 564; *Mayor of Baltimore v. Radecke*, 49 Md. 217, 231, 33 Am. Rep. 239; *Gittings v. Baltimore*, 95 Md. 419, 424, 52 A. 937, 54 A. 253; *Joesting v. Baltimore*, 97 Md. 589, 594, 55 A. 456; *Cahill v. Judges of Appeal Tax Court*, 130 Md. 495, 497, 100 A. 834; *Bouis v. Baltimore*, 138 Md. 284, 288, 113 A. 852; *Jones v. Gordy*, 169 Md. 173, 178, 180 A. 272. In this instance the words of the authorization of the special appeal are that petitioners may complain that a decision of the Board is illegal, and this could now be construed to exclude a question of validity of the ordinance. On the other hand, it was the design of the statute and the ordinance that this question along with others arising in the application of the zoning law should be litigated in one proceeding, at the suit of all persons feeling aggrieved, taxpayers and others. In a suit in equity for an injunction a plaintiff must show a special peculiar injury to himself to entitle him to relief. *Bauernschmidt v. Standard Oil Co.*, 153 Md. 647, 139 A. 53. And if by the logical process required the questions should be separated

those on objections to irregularities in the Board's action to be heard on the statutory appeals, and those on objections to the validity of a variation made by ordinance to be heard on an application for an injunction the design of the statute and the ordinance would be departed from. Some persons interested in a municipal development, who might feel aggrieved within the meaning of the law, and are intended to be heard, taxpayers and others besides neighboring owners, for instance, could not contest the validity of the variation at all because they would not be able to show the peculiar injury necessary. *Bauernschmidt v. Standard Oil Co., supra.* And questions of validity of the variation and of irregularities in the Board's action could not be heard together in one proceeding. The statute and ordinance are still capable of a construction that will permit raising the question of validity on the appeal; it is convenient for the court on appeal to hear questions as the original ordinance contemplated; to separate the questions we should be following strict logic to impose a disadvantageous practice; and that, we have concluded, should not be done. The contest of the varying ordinance may be heard on the appeal to the court, although not before the Board.

The purpose of the zoning law is, of course, to devote general areas or districts to selected uses. "The whole value of zoning lies in the establishment of more or less permanent districts, well planned and arranged." *Rehfeld v. City and County of San Francisco,* 218 Cal. 83, 85, 21 P. 2d 419, 420. The act enabling the City to fix such areas, Code, Article 66B, provides for division of the city into districts with uniform building regulations throughout, for the purposes within the police power of the government: Avoidance of congestion on streets, fire and other hazards, promotion of health and general welfare, provision of adequate light and air, prevention of overcrowding of land, avoidance of concentration of population, and facilitation of adequate provision of transportation, water, sewerage, schools, parks and other public requirements. *Sugar v. North Baltimore Methodist*

*Protestant Church, supra,* 164 Md. 493, 165 A. 703. And the varying ordinance here, No 323, calls the lot segregated a district. An exception of one such lot as that of Levine for a filling station would be a departure from the purpose, and unless made by reason of some exceptional conditions, under authority of the enabling act, would be illegal, even if attempted by municipal ordinance. Clearly there can be no valid exception of one lot merely as a favor to the one owner, because it is more profitable to him. The court has already spoken on this.

"In the effort to bring about the greatest good of the greatest number, collective communal action is indispensable and, therefore, the state requires, and may lawfully exact, of every individual that he submit to such restraints in the exercise of his liberty or his rights of property as may, under the state and federal Constitutions, reasonably be necessary for the common good. * * * It is upon this principle that the general terms of the ordinance at bar are sustained. The boundaries of the districts and the regulatory measures prescribed with respect to the property within these districts are supported upon the theory of their uniform, equal, and universal application within the territory affected. It is, however, destructive of this principle of equality that the location of a boundary line between two districts of a municipal zoning system, and the respective use of the property within each district, so determined and prescribed with reference to the general good of the municipality, should, within a strip of one hundred feet in width, be obliterated for the benefit of a *particular* property in a specific case. Not only would this constitute a bestowal of a privilege to a private and special interest in opposition to the general benefit which had determined the course of the boundary line, but it would, in effect, constitute a change *pro tanto,* of that boundary line without reference to the public good * * *." *Sugar v. North Baltimore Methodist Protestant Church, supra,* at pages 493, 494, of 164 Md., at page 705 of 165 A.; *Mueller v. C. Hoffmeister Undertaking Co.,* 343 Mo. 430, 121 S. W. 2d 775; *Linden*

*Methodist Episcopal Church v. Linden,* 113 N. J. L. 188, 173 A. 593.

So long as this district continues zoned for residential purposes, it must be dealt with as a residential district, and the segregation of a lot within it for a commercial use must be dealt with as a discrimination. Not all discriminations are, however, departures from the authority of the enabling act, or unconstitutional. Section 5 of the enabling act, Code, Art. 66B, provides that the zoning regulations, restrictions and boundaries for the districts with which the act deals may from time to time be amended, supplemented, changed, modified or repealed, under specified conditions. The change or modification of boundaries, properly construed, would not, in our opinion, include the cutting out of a single lot, unless perhaps the lot should stand at the boundary of the district, and the segregation might thus be a change of the boundary itself. But the power to change or modify a restriction applicable to a district must include the power to relieve a particular lot from it if the peculiar conditions of that lot or the public good requires it. If a lot should be susceptible of only a use different from that prescribed for the district, the special hardship of a prohibition of that one use might justify an exception from the general restriction. *City of North Muskegon v. Miller,* 249 Mich. 52, 227 N. W. 743; *Tews v. Woolhiser,* 352 Ill. 212, 185 N. E. 827. And a question of reasonableness of the municipality's exercise of the power under the enabling act might also present itself. *State v. Gurry,* 121 Md. 534, 541, 88 A. 546 47 *L. R. A., N. S.,* 1087, *Ann. Cas.* 1915B, 957; *Baltimore v. Hampton Court Co.,* 138 Md. 271, 113 A. 850, 15 *A. L. R.* 304; *Dowsey v. Village of Kensington,* 257 N. Y. 221, 177 N. E. 427, 86 *A. L. R.* 642.

We do not find any peculiar condition in this lot sufficient to justify an exception. It does not differ materially from other lots in the district; and there has been no change in the district since the enactment of the zoning ordinance, unless it should be that of

the extension of Cold Spring Lane as a widened highway. The lot has, and always has had, since before zoning began, advantages in the site for a filling station for the owner's profit; but that alone would not be sufficient reason for excepting it. Any zoning in districts must involve denials of more profitable uses for some individual lots. *Leahy v. Inspector of Buildings*, 308 Mass. 128, 31 N. E. 2d 436; *Zahn v. Board of Public Works*, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074. This one would seem to be useful for residential purposes equally with other land in the district, although here as elsewhere much grading will be required for that use, or, presumably, for use as a filling station.

There may be one justification for an exception, however, in a provision for traffic on Cold Spring Lane, which is steadily increasing, and in a lesser degree for that on Greenspring Avenue. The nearest filling stations are a half mile to the west and a mile to the east. That provision may possibly be regarded as sufficient for the traffic, but it seems to the court that this is not so clearly true that the action of the City authorities and the Board should be reversed judicially as arbitrary and capricious. We must assume, if it is possible to do so, that these officials exercised their judgment on its sufficiency, and we cannot say that they did not, and acted without good reason. There will doubtless be some reduction in value of the neighboring property from construction of the additional filling station, some detraction from the beauty and attractiveness of the region as it has existed, but if the change is one within the police power of the City, not arbitrary and capricious, that is a detriment which must be suffered. The detriment alone would not prevent the meeting of another public need, if found to exist. And the court has come to the conclusion that in this instance the decision of the City officials should be accepted on the appeal as it was below.

In argument it has been urged that the invasion by the one filling station will, according to the ordinary course, be followed by others, probably by one on each corner of

the intersection, to the further reduction in character of the district, but that does not follow. A finding that one filling station may meet a public need does not mean that others would be justified, at least while the district continues zoned as a residential one.

The objection to the exercise of the Board's discretion is based upon questions and remarks by the chairman at the hearing of the protests which indicated to the protestants that he had prejudged the question, and was contending on behalf of the applicant. One of the protestants expressed a wish that he give the question consideration in just a little more impartial way. But the Board was made up of more than one member, and in the appearance of prejudgment mentioned there is not enough to enable a court to say that the Board's discretion was not exercised as required by law. Partiality in the exercise of discretion, at least when not shown to have produced in the result a failure to fulfill the function of the officers, would not be ground for reversal of their action.

*Order affirmed, with costs.*