## MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *v.* SEABOLT ET AL., CO-PARTNERS TRADING AS ROLAND INVESTMENT COMPANY

[No. 126, October Term, 1955.]

200

*Decided June 6, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Joseph S. Kaufman* and *Bernard S. Melnicove,* with whom were *Thomas N. Biddison, City Solicitor, Shirley Brannock Jones, Assistant City Solicitor* and *Needle & Melnicove* on the brief, for appellants.

*J. Cookman Boyd, Jr.,* and *Henry M. Decker, Jr.,* for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the City of Baltimore and by intervening property owners from a declaratory decree of the Circuit Court No. 2 of Baltimore City passed in a suit instituted by the appellees determining that the Zoning Ordinance of that City is "invalid, ineffective and unenforceable insofar as it attempts to restrict to residential use only" a tract of land owned by the appellees.

The appellees, Seabolt and Suhr, co-partners, trading as Roland Investment Company (sometimes referred to below as "Roland Investment"), are the owners of the tract in question which is about two acres in area and very irregular in shape. It lies south of 34th Street and slightly east of Roland Avenue and consists of an aggregation of lots which the appellees bought at tax sales over a period of about two years. Since the passage of the Baltimore Zoning Ordinance (Ordinance No. 1247, approved March 30, 1931), this area

has been zoned as residential. The appellees were aware of this when they purchased the properties and they bought them with the intention of seeking a change in their zoning classification. They initiated ordinances closing streets running through the tract, which existed mostly on paper, in the beds of some of which were located sanitary and storm water sewers. Under these ordinances the City reserved easements for all then existing utilities.

Roland Investment also sought the passage of an ordinance changing the zoning classification of its tract, but abandoned it in the face of protests of persons residing in the neighborhood. Next, Roland Investment applied first to the Buildings Engineer and on appeal to the Board of Municipal and Zoning Appeals for a special exception permitting a commercial use of this property in a residential use district. The application sought permission to construct a Post Office garage and facilities on part of the land. After a hearing the Board denied the application on October 19, 1954.

Roland Investment did not avail itself of the right to appeal within thirty days from the decision of the Board to the Baltimore City Court, in accordance with Code (1951), Article 66B, Section 7, which is a part of the State Zoning Enabling Act, and the Zoning Ordinance. Both the Act and the Ordinance also allow appeals from the City Court to the Court of Appeals.

Instead of following this procedure, Roland Investment on October 24, 1954 filed its bill in this case against the City for a declaratory decree to the effect that the Zoning Ordinance, as originally enacted and as since amended, was "unconstitutional and invalid" insofar as it attempted to restrict Roland Investment's property to residential use only. The bill alleged both that the Zoning Ordinance when enacted was arbitrary and unreasonable in classifying this property as residential and that there had been a subsequent and substantial change in conditions as a result of which the existing restrictions and zoning regulations as applied to this tract were unreasonable, arbitrary and contrary to Section 3 of the Enabling Act and resulted in a taking of Roland Investment's property without due process of law.

The City, and later the intervenors, demurred to the bill, and their demurrers were overruled. At the hearing on the merits Roland Investment adduced the testimony of a number of witnesses to show that the property could not be used for residential purposes. The property is undeveloped and rather rough; it has a fairly steep grade and lies in an area which is close to some commercial or industrial concerns. There are also residences in the immediate neighborhood, and the tract lies in what may be called something of a borderland area. The Chancellor found that the evidence was not sufficient to sustain the appellees' claim that the original zoning was confiscatory, but that the deterioration of some of the adjoining property and the complete change of use of other parts of the adjoining property had so changed the neighborhood that the present restriction on the use of the appellees' property precluded its use for any purpose for which it was reasonably adapted. He accordingly held that (1) the Zoning Ordinance resulted in a taking of the appellees' property without compensation (citing *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. 2d 482) and (2) that it was not necessary to follow the statutory procedure for appeal where a constitutional question was involved. In support of the second proposition he cited *Hoffman v. City of Baltimore,* 197 Md. 294, 79 A. 2d 367, and *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387. He further held, on the authority of these cases, that the complainants were entitled to declaratory relief, though he expressed reluctance to grant it "in view of the deliberate failure to appeal to the Baltimore City Court the decision of the Board of Municipal and Zoning Appeals refusing to grant an exception."

The first question, and the only one which we think it necessary to decide, is whether or not the appellees are entitled to declaratory relief.

The pertinent statutory provisions appear in Article 31A of the 1951 Code, and in the preamble to Chapter 724 of the Acts of 1945, which re-enacted Article 31A, and in the Enabling Act and the Zoning Ordinance.

The first sentence of Section 1 (entitled "Scope") of Article 31A states that: "Courts of record within their re-

spective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 2 (entitled "Power to Construe, etc.") provides in part that: "Any person * .* * whose rights, status or other legal relations are affected by a statute [or] municipal ordinance * * * may have determined any question of construction or validity, arising under the * * * statute [or] .ordinance * * * and obtain a declaration of rights, status or other legal relations thereunder."

Section 6 of Article 31A, which is directly involved here, reads (so far as relevant) as follows:

> "6. (Discretionary.) Relief by declaratory judgment or decree may be granted in all civil cases in which an actual controversy exists between contending parties, or in which the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or when in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree shall serve to terminate the uncertainty or controversy giving rise to the proceedings. When, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case in which the other essentials to such relief are present; * * *."

At this point, the preamble to Chapter 724 of the Acts

of 1945 should be noted. It recites that "The Court of Appeals of Maryland, in a series of recent decisions, has held that a proceeding for a declaratory judgment is not appropriate within the contemplation of the Uniform Declaratory Judgments Act, when there exists an immediate cause of action between the parties for which one of the common remedies at law or in equity is adequate and available, * * *." The next paragraph states that it is the sense of the General Assembly that "the real legislative intent" in the passage of the Uniform Act was to the contrary, and the third and final paragraph expresses the intent and desire of the General Assembly by the repeal and re-enactment of that Act "so to change the wording of the Act that it clearly and unmistakably expresses the intention which the General Assembly believes was sought to be expressed in the passage of the Act." It is evident that this emphatic re-enactment of the statute is appropriate to the construction of provisions allowing declaratory relief in situations where "the common remedies at law or in equity" are "adequate and available" and amounts to a legislative reversal of decisions holding declaratory relief unavailable in such situations. See *Schultz v. Kaplan*, 189 Md. 402, 56 A. 2d 17. It is equally evident that this preamble does not express any intention to modify either in terms or by construction, the explicit language of Section 6 which requires that "When * * * a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed."

Turning to the Enabling Act and to the Zoning Ordinance (as amended), we find that Section 7(g) of the former empowers a Board of Zoning Appeals (the Baltimore "Board of Municipal and Zoning Appeals" being such a Board) to hear and decide special exceptions to the ordinance upon which it is required to pass and to authorize upon appeal in specific cases such variance from the terms of the ordinance as is necessary to avoid arbitrariness and so that the spirit of the ordinance shall be observed and substantial justice done. The Zoning Ordinance, as amended, (Ord. No. 711, approved May 21, 1953), by Section 35(g) repeats the provisions of Section 7(g) of the Enabling Act above mentioned, and by paragraph (j) of the same Section undertakes to prescribe standards to

be followed in determining whether exceptions or variances should be granted. Section 36, which incorporates by reference the standards specified in Section 35(j), empowers the Board to make special exceptions in all cases where the Ordinance provides that the approval of the Board is required and in other cases, among which are those when there are "practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any provision" of the Ordinance.

The validity of the Zoning Ordinance as applied to a particular property may be raised on appeal from the Zoning Board. *Ellicott v. City of Baltimore,* 180 Md. 176, 23 A. 2d 649; *Hoffman v. City of Baltimore,* 197 Md. 294, 79 A. 2d 367; *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. 2d 482. The relief sought in the case last cited and the evidence offered in support thereof bear a strong resemblance to the present case though the method by which relief is now sought in this case differs from that followed in the *Cohn Case.*

In the light of these cases—particularly the *Cohn Case* and the majority opinion in the *Hoffman Case* (and the dissent did not go to this point)—we need not be concerned with any objection to the delegation of power to the Board, such as was involved in *Jack Lewis, Inc. v. City of Baltimore,* 164 Md. 146, 164 A. 220, or *Sugar v. North Baltimore Methodist Protestant Church,* 164 Md. 487, 165 A. 703, and the effort to overcome that objection by the amendment of the Zoning Ordinance referred to in *Heath v. City of Baltimore,* 187 Md. 296, 49 A. 2d 799; nor need we review other cases in which delegations of power have been recognized or upheld, such as *Oursler v. Board of Zoning Appeals of Baltimore County* (exception for restaurant in residential zone), 204 Md. 397, 104 A. 2d 568, *Offutt v. Board of Zoning Appeals of Baltimore County* (reclassification), 204 Md. 551, 105 A. 2d 219, or *Givner v. Commissioner of Health* (health regulations relating to bathtubs), 207 Md. 184, 113 A. 2d 899; or *Pressman v. Barnes* (traffic regulations), 209 Md. 544, 121 A. 2d 816. As was said in the *Hoffman Case,* at 197 Md. 305, 79 A. 2d 372, "Whether or not these provisions of the ordinance, especially those of paragraph 33 (c) [now 36 (c)] rather than 33 (b) [now 36 (b)], are in other respects wholly or partially

invalid, they are valid at least to the extent of authorizing the board to make 'exceptions' when the law itself would make exceptions by holding the ordinance *pro tanto* invalid."

The appellees rely heavily upon *Kracke v. Weinberg, Hoffman v. City of Baltimore,* above cited, and *Ellicott v. Baltimore,* 180 Md. 176, 23 A. 2d 649, as upholding their right, notwithstanding the availability of a statutory method of review, to maintain this suit for a declaratory decree.

Of these cases only *Kracke v. Weinberg* was brought under the Declaratory Judgments Act, and the right to maintain the suit under that Act was directly challenged and was upheld. In that case this Court pointed out that there was no pending application for the construction of any building or structure on the property there involved, except a small shed, for which a permit had been denied and an appeal from such denial had been taken from the Board of Zoning Appeals, but had not been pressed; and this Court also pointed out that a decision on that appeal would affect only a very small portion of the land there in question. Also, in *Kracke v. Weinberg,* the appellees had no present basis for invoking the statutory remedy. Clearly, no such situation existed in the present case. Here, the appellees, themselves, had made an application to the Board for a permit to build a substantial structure on their land and it had just been denied. Even before the expiration of their statutory right of appeal, they elected to bring this suit. They did not have to wait for some basis upon which they might invoke their statutory remedy. They had it; they elected not to use it. Another difference between *Kracke v. Weinberg* and the instant case is that the former involved the validity of the whole of an ordinance which undertook to reclassify the appellees' property from second commercial or industrial to residential use. Here the application of a city-wide Zoning Ordinance, the validity of which has long been upheld, to a particular tract of land is under attack. We shall not pause to consider whether the appellees' purchase of these lots with full knowledge of their existing zoning classification might affect their rights to attack it. Cf. *Francis v. MacGill,* 196 Md. 77, 75 A. 2d 91; *Gleason v. Keswick Improvement Ass'n,* 197 Md. 46, 78 A. 2d 164.

We think that what was said in *Ellicott v. City of Baltimore, supra* (180 Md. at 180-181, 23 A. 2d 651) is persuasive in support of the view that in a case, where changed conditions are said to have caused the application of a general zoning ordinance to a specific piece of property to become arbitrary and unreasonable, and where there is no obstacle to the immediate invocation of the statutory method of appeal so as to obtain a review of the substantial merits of the controversy, the statutory method should be followed and that under Section 6 of Article 31A of the Code (1951) declaratory relief is not available.

It is true that in *Hoffman v. City of Baltimore,* at page 305 of 197 Md., page 372 of 79 A. 2d, the statement appears that: "Stated most simply, the question now presented is whether the Zoning Ordinance, as applied to this property, now is (i. e., originally was in 1931, or has since become) invalid. Such a question ordinarily may or must be raised by bill in equity, but it may also be raised on appeal from the zoning board, although (it is said) it may not be heard before the board. *Ellicott v. Mayor and City Council of City of Baltimore, supra,* 180 Md. 180, 181, 23 A. 2d 649." The actual holding in the *Hoffman Case* was that the question could be raised on appeal from the Board. Such was also the holding in the *Ellicott Case.* The portion of the *Ellicott Case* upon which the above extract from the *Hoffman Case* is based, dealt with the construction of the Enabling Act and of the Zoning Ordinance passed in pursuance thereof, which permitted petitioners appealing from a decision of the Zoning Board to base their appeal upon a claim that the action of the Board was illegal. The question was whether the words of this authorization could exclude from such review a question of the validity of the ordinance. In considering it, the Court referred to a number of cases in which it had been held that an appeal from the decision of a municipal board was not the appropriate proceeding for testing the validity of the ordinance, and that the aggrieved person "may and ought" to go into equity, or that equity has jurisdiction.

The question is not one of the jurisdiction of equity to enjoin the enforcement of an allegedly invalid ordinance, but

of the availability of relief by a declaratory decree. It does not follow that if there were a right to seek an injunction to prevent the enforcement of residential restrictions on this property, a right to a declaratory decree would necessarily come into existence. The Declaratory Judgments Act, even as now amended, does not say that there is a right to declaratory relief wherever there is a right to a usual legal or equitable remedy; it says that the existence of such a remedy shall not bar declaratory relief, not that ordinary relief and declaratory relief shall be co-extensive.

In the *Ellicott Case* the Court rejected the argument that the aggrieved parties were required to go into equity to assert their rights. The opinion, written by Chief Judge Bond, said that "it was the design of the statute and the ordinance that this question [of validity] along with others arising in the application of the zoning law should be litigated in one proceeding, at the suit of all persons feeling aggrieved, taxpayers and others." It pointed out that, in many instances, persons accorded a right of appeal under the Zoning Ordinance might not have such an interest as would entitle them to maintain a suit in equity. Judge Bond also said: "And if by the logical process required the question should be separated those on objections to irregularities in the Board's action to be heard on the statutory appeals, and those on objections to the validity of a variation made by ordinance to be heard on an application for an injunction the design of the statute and the ordinance would be departed from. * * * The statute and ordinance are capable of a construction that will permit raising the question of validity on the appeal; it is convenient for the court on appeal to hear questions as the original ordinance contemplated; to separate the questions we should be following a strict logic to impose a disadvantageous practice; and that, we have concluded, should not be done."

Although no problem of separation of questions is involved in the present case, we think that similar reasoning to that set forth in the *Ellicott Case* leads us to the conclusion that the statutory remedy of appeal from the Board is the method of review which should have been followed. If resort to declaratory judgment procedures can be had in every case where an

applicant is dissatisfied with the ruling of the Board and the application of the general Zoning Ordinance to specific properties all over the City can be challenged, a condition of chaos can easily result. If such suits were successful they would result in what might be termed "spot unzoning" and they would set up areas completely free of any zoning regulations until new ordinances affecting the properties so "unzoned" could be enacted. Even then, these would have to run the gauntlet of successive attacks, which, in some instances, might quite ironically be based upon charges of spot zoning.

If there were no ready, practicable means of obtaining judicial review of the validity of the Zoning Ordinance as applied to the appellees' property through following the statutory remedy, we might have such a situation as existed in *Kracke v. Weinberg;* but we do not. The appellees assert that the remedy which they seek through declaratory relief is broader than what they could have obtained by taking an appeal from the ruling of the Board of Municipal and Zoning Appeals on their application. That is doubtless true, but it does not seem conclusive. Their application which was before the Board presented the use which they then wished to make of their property, and it was a substantial use. Their change of procedure seems to have been designed not to obtain permission to make any specific use of their property, but to free it of restrictions limiting it to residential use. In practical effect, this would apparently free it of all zoning restrictions, since no other classification would be applicable. Whether or not Section 6 of Article 31A of the Code flatly prohibits the use of a declaratory remedy in such a case as this, some discretion is still left to the courts, even after the enactment of Chapter 724 of the Acts of 1945, in the granting of declaratory relief. *Staley v. Safe Deposit & Trust Co.,* 189 Md. 447, 56 A. 2d 144; indeed Section 6 itself is captioned "(Discretionary)". The use of the Declaratory Judgments Act to accomplish such a result as that just stated would, we think, frustrate the purposes of the zoning laws and would go beyond the proper limits of declaratory relief.

We are accordingly of the opinion that the decree should be reversed and the bill should be dismissed. Since we have not

found it necessary to pass upon the merits of the appellees' claim that their property is arbitrarily and unreasonably zoned as residential, the reversal is, of course, without prejudice to their right to seek relief on this ground in an appropriate proceeding.

*Decree reversed, with costs,*
*and bill dismissed.*